## Girard Trust Co. *v.* Mellor, Assignee, Appellant.

*Trust—Declaration—Delivery—Creditors—Public policy.*

An intention to create a trust with respect to personal property in the settlor's control, looking to the future and not to the present, and resting upon a naked declaration merely, without signing, or delivery, or promise to deliver, is not sufficient to vest any right in a creditor for whom the trust was intended. Such a trust would be against public policy.

Barker Bros. & Co., as agents and bankers, received deposits for stock subscriptions. Delay occurring in the issuance of the shares, Barker Bros. wrote a declaration that certain enumerated securities were " held as collateral security against deposits of subscribers and underwriters." This declaration was not signed, and, with some of the securities, was placed in an envelope indorsed as containing the collaterals. This envelope, with the rest of the securities enumerated, was placed in a tin box which contained nothing else, and the box was deposited for safe keeping in the custody of a trust company to the credit of Barker Bros. & Co., until they made an assignment for benefit of creditors. The assignee demanded and received possession of the box. Barker Bros. & Co. were discharged as trustees of the securities and plaintiff was appointed trustee in their stead. Before the assignment the assignee and one of the subscribers were told that the securities were set aside to secure the subscribers. *Held*, that a court of equity would not decree a transfer of the securities by the assignee to plaintiff as trustee.

Argued Jan. 6, 1893. Appeal, No. 322, Jan. T., 1893, by

defendant, Edward Mellor, assignee in trust for creditors of Barker Bros. & Co., from decree of C. P. No. 2, Phila Co., Dec. T., 1890, No. 549, for plaintiff, the Girard Life Ins., Annuity and Trust Co., of Phila., in bill in equity.  Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Bill for transfer of securities.

The master, E. Hunn Hanson, Esq., found:

" 1.  That in May of 1890 there was organized in London a corporation to be known as the American and European Finance Corporation, Limited, with a capital of $5,000,000, half of which was to be called and twenty per centum of that called was to be paid.  Barker Bros. & Co. were selected as the agents and bankers in America of that corporation, with authority to receive subscriptions to the capital.  These they did receive. Exhibit A of the bill filed contains the list of those who subscribed through Barker Bros. & Co., and the dates of the subscription and payment.

" 2.  That under instructions from London these moneys subscribed were by Barker Bros. & Co. placed to the credit of the American and European Finance Corporation, Limited.  The issue of shares to subscribers was intended to be made in August, 1890 ; owing to the condition of the money market it was deferred from time to time, and in September it was proposed again to defer it.  That thereupon about Sept. 25, 1890, Wharton and Abraham Barker intended to create a trust in which they would be the trustees with respect to the promissory notes and mortgage bonds which they thought to set apart for the benefit of the subscribers to the American and European Finance Corporation, whose names are set forth in Exhibit A, so that Barker Bros. & Co. might have the means of transmitting the moneys to London if the company was formed, or for payment to the subscribers if the scheme was not perfected.  And accordingly Wharton Barker wrote the following declaration :

" ' Securities held as collateral security against deposits of subscribers and underwriters of the American and European Finance Corporation Limited, to be established in London as per prospectus prepared in London in July, 1890 :

| | |
|---|---:|
| Two notes of the Wharton R. R. Switch Company of $25,000 each . . . . . . . | $50,000 |
| Notes of the Oregon Pacific R. R. Company, five in all, secured in the aggregate by $111,000 first mortgage bonds of the Oregon Pacific R. R. Company . . . . . . . . | 56,850 |
| $180,000 Oregon Pacific R. R. Company first mortgage bonds at 50 . . . . . . | 90,000 |
| | $196,850 |
| Note of John W. Henderson . . . . | 2,500 |
| | $199,350 |
| Total amount of said deposits . . . . | 183,750 |
| Bonds of the Oregon Pacific R. R. Company probably worth 70.' | |

"3. That this paper, with the notes and some of the bonds described in it, were taken from the chest of Barker Bros. & Co., and by Wharton Barker placed in an envelope, on which was written 'Subscribers to the American and European Finance Corporation, Limited, collaterals all in this box.' That the rest of the bonds were in a roll, and these with the envelope were placed in a tin box, which contained nothing else, and the box was deposited in the custody of the Fidelity Trust and Safe Deposit Company, where it remained until Barker Bros. & Co. made an assignment for the benefit of their creditors on Nov. 20, 1890. Shortly after the assignee demanded of the trust company the box, and so procured possession of it.

"4. That the notes above mentioned were indorsed by the respective payees, and the bonds were of the coupon variety, and all the securities were capable of a legal transfer by delivery to a bona fide purchaser without notice; that after the box was deposited with the trust company Barker Bros. & Co. exercised no relation to or control over it. Prior to their assignment their need was great for money, and to procure it they used such property as they had with which to raise it. They did not in any way use the securities in the box. In the words of Wharton Barker, 'They were not our property, and therefore we could not use them.'

"5. That when Barker Bros. & Co. dealt with these securi-

ties in the manner described they believed themselves entirely solvent, and at that time, estimating their property by the money market quotations of its value, they were not only solvent but rich.   The securities when set aside were in value more than the amount of the subscriptions.  Now they are something less.

" 6. That Edward Mellor,, who was then employed in the banking house of Barker Bros. & Co., at the instance of George W. Fiss, one of the subscribers in Exhibit A of the bill, inquired of Wharton Barker the situation of the moneys subscribed, saying that Mr. Fiss wished the information, and Mr. Barker said that Barker Bros. & Co. had put securities aside to secure the subscribers and to cover the subscriptions, and this was communicated to Mr. Fiss by Mr. Mellor; that this was a week before the assignment for the benefit of creditors was made, and at this time Barker Bros. & Co. did not believe, and had no reason to believe, they were about to fail.   They still considered themselves solvent, and also rich.

" 7. And that the complainant in the bill is the duly appointed successor to the position in which Barker Bros. & Co. stood with respect to the securities mentioned in the bill.

" CONCLUSIONS FROM THE FOREGOING FACTS.

" The principle invoked by the complainant and pressed in argument on its behalf is, that a trust may be declared in favor of a volunteer with respect to personal property in the settlor's control, and without any change of its possession which a court of equity will uphold.   Such a principle of equity exists, although it has had the unfavorable comment of some chancellors, and others have indicated the danger to creditor and other rights attendant upon it.

" In order to the validity of a trust of personal property in favor of a volunteer, and where the possession is intended to continue in the donor or settlor, the purpose of the settlor should be lawful, and the trust must be perfectly created in the sense that everything must be done by him to part with the beneficial interest in the property and to establish it in him who is intended to be benefited: Melroy v. Lord, 4 De G. F. & J. 264, 274; and  Warriner v. Rogers, 16 L. R. Eq. 340.   In the last mentioned case, the Vice Chancellor, Sir James Bacon, said :  ' The thing necessary to give validity to a declaration of

trust, the indispensable thing, I take to be that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration, should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest.'

" Sir George Jessel, M. R., in Richard v. Delbridge, 18 L. R. Eq. 11, expressed the same idea as follows: ' The legal owner of the property may, by one or other of the modes recognized as amounting to a valid declaration of trust, constitute himself a trustee, and, without an actual transfer of the legal title, may so deal with the property as to deprive himself of its beneficial ownership, and declare that he will hold it from that time forward, in trust for another person.'

" The principle is conceded by the Supreme Court of Pennsylvania to be a part of the law of the state. In Dickerson's Appeal, 115 Pa. 198, 210, it is said: ' It is well settled that the owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party, upon certain specified trusts—in other words, he may constitute either himsels or another person trustee. If he make himself trustee no transfer of the subject-matter of the trust is necessary.'

" Whether or not the settlor has perfectly created a trust mainly depends upon the facts, and in coming to a conclusion in this behalf, the court will give effect to the relation of the parties to the transaction as well as to the character and situation of the property.

" In the present case Barker Bros. & Co. were the bankers of the company for whose shares subscribers had paid their money, and as to these latter they were in duty bound to transmit the money to the company in London, and transfer from it to the subscribers here the shares for which subscriptions had been made if the enterprise succeeded. If it did not, they should then become the channel through which the subscribers ought to receive again their moneys. The moneys paid had gone presumably into the funds with which Barker Bros. & Co. did their banking business, and therefore, the better to secure the purposes of the subscribers, Barker Bros. & Co. procured and held the securities mentioned at page 2 of the bill, and this

was the situation of the property just before Barker Bros. &
Co. conceived the idea of declaring, with respect to these secu-
rities, the trust which was intended to be expressed in the paper
writing set out at page 2 of the bill.    The purpose of holding
these securities in trust was obviously lawful and judicious, as
well in view of the delays of the American and European Fi-
nance Corporation, Limited, in issuing its shares, as of the fur-
ther delay in this regard from September to midwinter, which
was contemplated by the corporation.

"This purpose was duly effected notwithstanding the fact
that there was no actual transfer of the legal title to the securi-
ties from Barker Bros. & Co., if they so dealt with them as to
deprive themselves of all beneficial ownership, and declared
that from that time forth they were the custodians or trustees
for those beneficially interested in the property.    Their dealing
with the securities in this connection is exhibited : (1) By the
execution of the paper writing at page 2 of the bill, whereby
they, in substance, declared they held the securities to secure
the purpose of the subscribers, among whom they were not
numbered; in other words, by declaring the beneficial owner-
ship to be (at least to the extent of the subscriptions) in the
subscribers, and consequently to be themselves entirely divested
of it.    (2) By their conduct conformably to the declaration,
when needing all the securities to which they had a right with
which to raise money to prevent their failure, and, therefore,
when in extreme commercial need, during which time these se-
curities were never used or touched, for as Wharton Barker
testified, they were not their property.    (3) By their disclosure
to Mr. Fiss, one of the subscribers, that they had put securities
aside to secure the subscribers (meaning those in Exhibit A),
and to cover the subscriptions, by which one of a class of bene-
ficiaries was so informed that all possibility of effectively revok-
ing the position taken by Barker Bros. & Co. was cut off, had
they attempted such revocation, which in point of fact they did
not.

"It may be said that the paper-writing omitted in terms to
declare Barker Bros. & Co. trustees.    That which was done
must be admitted to have been very informal, but formality
was not essential to carry out their intention.    What was done
brought the acts within the decision of Sir James Bacon in

Heartley v. Nicholson, 19 L. R. Eq. 233, 242, where he decides: 'It is not necessary that the declaration of a trust should be in terms explicit, but what I take the law to require is that the donor should have evinced, by acts that admit of no other interpretation, that he himself has ceased to be, and that some other person had become the beneficial owner of the subject of the gift or transfer, and that such legal right to it, if any, as he retained was held in trust for the donee.'

" Accordingly, by reason of the conclusions drawn as above from the facts found, it is determined that Barker Bros. & Co., in their dealing with these securities, so created a trust that no aid of a court was required to perfect it, or any other aid than to carry into effect an existing equity with respect to the property mentioned on page 2 of the bill, of which they were the trustees and the subscribers, in Exhibit A of the bill the cestuis que trust.

" This determination is not disturbed by the fact of the assignment on Nov. 20, 1890, of Barker Bros. & Co., and after the existence of the trust.

" When the trust was created, and almost up to the time of their assignment, they believed themselves far more than solvent, and thought themselves worth about $1,000,000; and it is in evidence that estimating their property at the then generally quoted market value they were so. In what they did, as well as in the time at which it was done, there was not only an absence of any purpose to hinder or delay their creditors, but an entire good faith, as well to them as to the subscribers to the European and American Finance Corporation Limited. And nothing has been disclosed or seemingly exists from which creditors, subsequent to the trust, could aver constructive fraud by virtue of the statute of 13 Eliz.: Harlan v. Maglaughlin, 90 Pa. 293."

The master reported a decree in accordance with the prayer of the bill. Exceptions to the legal conclusions of the master were dismissed and a decree entered as recommended.

*Errors assigned* were to dismissal of exceptions and to decree, quoting them.

*John G. Johnson*, for appellant.—No valid trust was created.

The debtor retained not only the legal title but also the beneficial interest. It was at best a declaration of intention, without performance. The real intention was to set apart in a separate place for a special purpose, viz., that of collateral security, certain named assets. The principle would be the same had the assets consisted of a stock of merchandise in a store.

Even though the transaction amounted to a trust, such trust could not be enforced as against creditors: Dickerson's Ap., 115 Pa. 210 ; Kater v. Steinruck, 40 Pa. 501. Legal title and possession were in the assignee for benefit of creditors. Equity will not decree a special trust by defeating the trust for creditors. It is against the policy of the law to establish such a trust on the testimony of the assignor. The next step will be the manufacture of such testimony.

If the transaction was a declaration of a valid and enforceable trust, it amounted to an assignment for the benefit of creditors with preferences, and therefore inured to the benefit of all the creditors: Act of April 17, 1843, § 1, P. L. 273.

In Moses v. Murgatroyd, 1 Johns. Ch. 119, there was an assignment in trust. The person held bound as trustee had received the assets of another under a duty to account therefor to the creditors.

*S. S. Hollingsworth, Mayer Sulzberger* with him, for appellee. —To create a valid trust there must be an intention, carried out by a valid declaration. The essentials of a declaration are : (*a*) sufficient words ; (*b*) a definite subject; (*c*) a certain or ascertained object; (*d*) a sufficient declaration of the terms of the trust. All these requisites are fulfilled in this case: Smith's Est., 144 Pa. 428 ; Richards v. Delbridge, L. R. 18 Eq. 11, 14 ; Moses v. Murgatroyd, 1 Johns. Ch. 119.

An, assignee for the benefit of creditors is not a purchaser for value, but takes subject to equities: Vandyke v. Christ, 7 W. & S. 373 ; Ludwig v. Highley, 5 Pa. 132 ; Rogers v. Fales, 5 Pa. 154; Bullitt v. Church, 26 Pa. 108. The equity here is with plaintiff. The fund was not a voluntary deposit but a trust fund handed over for a specific purpose.

The rule of Clow v. Woods, 5 S. & R. 276, that a chattel mortgage unaccompanied with a delivery of possession is void

as against creditors, is not to be extended to choses in action, unless the creditors have actually contracted upon the strength of the supposed possession of the debtor: U. S. v. Vaughan, 3 Bin. 394; Com. v. Watmough, 6 Wh. 116; Lightner's Ap., 82 Pa. 301; Early & Lane's Ap., 89 Pa. 411; Collins's Ap., 107 Pa. 590; Wallace's Ap., 104 Pa. 559; Mellon's Ap., 1 Gr., Pa. 212.

The act of 1843 has reference only to assignments made by debtors to trustees " on account of inability at the time of the assignment to pay their debts." The master found that " estimating their property by the money market quotations of its value " the Barkers were solvent. But if insolvent, it would only result, by the act, that these securites would be the property of plaintiff as the successors of Barker Bros., in trust for creditors, of which defendant is not one.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

All the facts necessary to a proper understanding of the questions involved in this contention are clearly and concisely stated in the report of the learned master, to whose findings of fact no exceptions appear to have been taken. The specifications of error relate to conclusions drawn from the facts thus established. Extended reference to the testimony, etc., tending to prove said facts, is therefore unnecessary.

When the general assignment of Barker Bros. & Co., to the defendant Mellor, in trust for the benefit of all their creditors, was executed on November 20, 1890, it is conceded that the legal title to the bonds and notes in controversy, as well as the possession thereof, was in said assignors. Under the deed of assignment, the securities were demanded by the assignee as part of the assets of the assigned estate, and were received by him from the Fidelity Insurance Trust and Safe Deposit Co., with which they had been deposited by the assignors for safe keeping only.

It must be conceded that the company plaintiff has no right to the custody of the securities in question unless a trust thereof, valid and binding not only as against Barker Bros. & Co., but also as against their creditors, was created by the acts of said firm in favor of the parties now represented by said plaintiff. As agents, in this country, for a corporation organized in Lon-

don in 1890, to be known as the American and European Finance Corporation, Limited, Barker Bros. & Co. received from sundry persons subscription moneys, to the capital stock of said corporation, which as bankers they were at liberty to use in same manner as funds of other depositors. In case the London corporation failed to issue the shares of stock subscribed for, it would, of course, be the duty of Barker Bros. & Co. to return said money to the respective subscribers from whom the same was received. They were therefore debtors to said London corporation, or to the subscribers, for the stock thereof, who had paid their subscriptions to them, in same manner as to their ordinary depositors. The securities were not purchased with the funds deposited by said subscribers ; nor does it appear that there was anything to distinguish them from the general assets of Barker Bros. & Co., unless it be due to or results from the manner in which they were marked, etc., by Barker Bros. & Co. They prepared a declaration setting forth that certain specified notes and bonds valued at $199,350, but claimed by them to be worth considerably more, were "held as collateral security against deposits of subscribers and underwriters of the American and European Finance Corporation, Limited, to be established in London, as per prospectus prepared in London in July, 1890." Appended to this is a schedule of the notes and bonds, valued as aforesaid. This paper (unsigned), with the notes and some of the bonds described in said schedule, was placed in an envelope on which was written : " Subscribers to the American and European Finance Corporation, Limited, collaterals, all in this box." This envelope, with the rest of the bonds, was placed in a tin box which was deposited by Mr. Wharton Barker, one of the firm, in the Fidelity Insurance Trust and Safe Deposit Company, where it and its contents remained undisturbed until defendant, as assignee of Barker Bros. & Co., took possession of it. A few days thereafter, upon the petition of Barker Bros. & Co., the court of common pleas discharged them as trustees of said securities, and same day, on petition of one of said depositors, appointed the company plaintiff trustee in their stead. The bill, filed shortly afterwards, avers in substance, inter alia, the receipt by Barker Bros. & Co., as bankers, etc., of certain subscription moneys, to the stock of said London corporation, aggregating $183,550, and that said

bankers had set apart, in their own hands, the securities afore-
said as collateral security for said deposits, etc., and praying
that defendant be enjoined from in any way dealing with or
disposing of said securities; and that he be ordered to transfer
the same to the company plaintiff, etc.

The learned master came to the conclusion that there had
been such a setting apart of said securities by Barker Bros. &
Co. as legally amounted to the creation of a valid trust in favor
of those who had deposited said subscription moneys, and rec-
ommended a decree ordering the delivery of the same by the
defendant assignee to the company plaintiff. Exceptions to
the report were dismissed and decree as prayed for was made.

Defendant contends that the acts above referred to were in-
sufficient to create a valid trust, in favor of said depositors, en-
forceable either against Barker Bros. & Co. themselves, or
against their general creditors, whom he, as their trustee under
the deed of assignment, now represents.

Referring to the unsigned declaration, etc., of Barker Bros.
& Co., the learned master rightly concedes that what they did
was very informal, but, assuming that formality was not essen-
tial to carrying out their intention, he concluded that what was
done brought the case within the principle recognized in Heart-
ley v. Nicholson, 19 L. R. Eq. 233, 243. The rule, as it is
stated in that case, requires " that the donor shall have evinced,
by acts that admit of no other interpretation, that he himself
had ceased to be, and that some other person had become the
beneficial owner of the subject of the gift or transfer, and that
such legal right to it, if any, as he retained was held in trust
for the donee." Tested even by this principle, we think the
acts of Barker Bros. & Co., in this case, fall short of what is re-
quired to create a trust such as is claimed by the plaintiff. As
already observed it is conceded that the legal title to the securi-
ties in question remained in Barker Bros. & Co. until the exe-
cution and delivery of their deed of assignment to defendant
in trust for all their creditors. The delivery of that instrument
was their final act disposing of all their property and assets.
Prior thereto, and up to that time, the securities were in their
possession and under their exclusive control. No one could
have successfully challenged their right to dispose of them as
they saw fit. Conceding the existence of a bona fide intention

to create the alleged trust, that intention was never in fact executed, either by signing the declaration above quoted, by change of possession, or in any other manner. Such an intention, looking to the future and not to the then present, and resting upon a naked declaration merely, without signing or delivery, or promise to deliver, is not sufficient to vest any right in the creditor.

The facts, as to what was done by Barker Bros. & Co., rest mainly on the testimony of Mr. Wharton Barker, the junior member of the firm. The accuracy of his testimony as to the transaction is not questioned; nor can the integrity of purpose, by which it was prompted, be doubted. But the question before us depends not so much upon the bona fides of the transaction as it does upon the legal and equitable rights of the general creditors, under the deed of assignment, as against the assertion of right in the particular class of creditors under the alleged special trust represented by the company plaintiff. That question must be decided on broader grounds than purity of motive or goodness of character. Considerations of public policy, if not absolutely controlling, are largely involved therein. If alleged special trusts, similar in their mode of creation to that in controversy, are upheld as valid, there is nothing to prevent any business man or owner of personal property from parceling out his goods or securities as he sees fit, and scheduling each parcel under a similar unsigned declaration in favor of particular creditors, or classes of creditors, without any change of possession, or even notification to such favored creditors. If that can be done, the temptation to commission of fraud, and, what is worse, to sustain it by perjury, would be greater than can be tolerated with any degree of public safety. The consequences to which it would lead are so manifest that it should not be sanctioned, unless established principles of law require us to do so. We are satisfied they do not; and hence, aside from other considerations, we think that public policy forbids recognition of the alleged trust as valid against the general creditors of the assignors.

As a general rule, in this state a debtor cannot, as against his creditors, assign personal property, as security, etc., and at the same time retain the possession thereof as theretofore. Possession must accompany the transfer as an essential part there-

of.  If the property is permitted to remain in the exclusive possession and control of the assignor, the transaction, while good as against himself, is a constructive or legal fraud upon his creditors and may be so treated by them.  To hold that exclusive possession may be retained by the debtor provided he agrees to hold as trustee until the same is demanded by his creditor or until default is made, would be to permit that to be done secretly and by indirection which the law condemns when done directly and openly.  This principle is so firmly grounded in our jurisprudence that no court of equity should lend its aid in the enforcement of a transaction that is not in harmony with the settled law on that subject.  We think the transaction in question clearly belongs to that class.  There are, it is true, some exceptions to the general rule, but they are grounded upon the special facts and circumstances of each case, such as in Collins' Ap., 107 Pa. 590, and Wallace's Ap., 104 Pa. 559.  There appears to be nothing in the facts of the case under consideration that ought to exempt it from the operation of the general principle.

It is also contended by defendant that "if the transaction was a declaration of a valid and enforceable trust, it amounted to an assignment for the benefit of creditors with preferences." It is unnecessary to pass upon the question involved in this proposition, because we are of opinion, aside from other considerations, that the acts of Barker Bros. & Co., relied on by plaintiff company, were insufficient to create a valid trust of any kind, and especially such a trust as that claimed by said plaintiff.

Decree reversed; and it is now adjudged and decreed that the bill be hence dismissed, with costs to be paid by the plaintiff.