The Tradesmen's National Bank of the City of New York *v.* Thomas Kent Manufacturing Co. and Philip Jagode and Clarence L. McIlhenny, trading as Philip Jagode & Company, Appellants.

*Warehousemen—Receipts—Bailment—Act of September 24, 1866.*

The Act of September 24, 1866, P. L. (1867) 1363, which makes a warehouse receipt negotiable to the extent that the person taking a transfer of it by indorsement and delivery is to be deemed the owner of the goods therein specified, applies only to a receipt issued by a bona fide warehouseman. It is not a question of good faith, or even of diligence, on the part of the person taking the receipt, but of the possession of a good title by means of a valid and genuine receipt.

In a contest between the holder of an alleged warehouse receipt for wool, and another party who had actual possession of the wool on which he had made advances in the regular course of business, it appeared that the person who had issued the receipt as a warehouseman was a clerk of the corporation which owned the wool; that he had rented a building in his own name which he called a warehouse; that the rent was paid by the corporation; that the only depositor in the warehouse was the corporation; that no charges were paid by the corporation to the clerk on account of warehouse, nor any credit given him on their books; that rents collected from subtenants of the building were paid over by the clerk to the corporation; that the clerk had no sign on the warehouse to indicate his proprietorship, kept no books of the business, except a book of blank receipts, had no office or even a desk in the warehouse, did not keep the key in his possession, was rarely there, and left the whole charge of the business, including the depositing and removal of goods, to the employees of the corporation. *Held,* that the warehouse receipt issued by the clerk for the wool conveyed no title as against the party having actual possession of the wool for advances made.

Argued Feb. 9, 1898. Appeal, No. 147, March T., 1896, No. 147, by defendants, from judgment of C. P. Delaware Co., Jan. T., 1897, No. 409, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Replevin to recover 183 bales of wool. Before CLAYTON, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

There is but one very sharp point in the case, and as you shall decide that point, so your verdict will be. That point is simply this : Was Mr. Turtle a warehouseman in the sense defined by the act of assembly which authorizes a warehouseman to give a receipt for goods taken on storage ? Now, that is the only question in the case ; everything else seems to be regular and fair. If you find that Mr. Turtle was a warehouseman, then I charge you that, having received the goods in his warehouse, and having given a warehouse receipt for them, and that receipt having been indorsed over by Keen-Sutterle Company to the plaintiff, I instruct you that it had a full, absolute title to the goods, as collateral security for the note it discounted for Keen-Sutterle Company. I instruct you that nobody has authority to issue a warehouse receipt, as it is known, unless he be a warehouseman. A warehouseman is one whose business it is to receive goods on storage for compensation, that is a warehouseman. Was Mr. Turtle such a man ? [The first evidence that he was a warehouseman is that he called himself one before there was any trouble. Two years before he rented the property, he took a lease in his own name for the storehouse, and he called it a storehouse. Now what is the next? Why, Keen-Sutterle Company called him a warehouseman. They agreed that he was, they recognized him as a warehouseman, and they put the goods in his storehouse and accepted a receipt, a formal receipt, acknowledging that their goods were there on storage, and that he was the custodian of the goods as a warehouseman. Then, here are two parties to the transaction that certainly are estopped from denying it. They have put it in writing and induced other people to act upon it. Mr. Turtle made the writing, Keen-Sutterle Company accepted the writing, so they are certainly estopped from denying that he was a warehouseman. Now, the bank acted on it, they recognized him undoubtedly as a warehouseman, because the man who owned the goods said he was a warehouseman ; he was the one man, then, who was interested in it ; he was not insolvent at the time ; he had not failed then ; that is, when I say " he," I mean the firm of Keen-Sutterle Company. They had not failed ; they had the dominion over the goods ; they could have sold them to anybody ; and while they had the dominion over the

goods they acknowledged that Mr. Turtle was a warehouseman and put them in his hands—what for? Why, probably for the very purpose of doing this; but that does not affect it.] [16] Although you may find that this warehouse was used for the purpose of having a place where goods could be stored and money borrowed by means of the receipts, that does not affect the question, and I think it is altogether likely that Keen-Sutterle Company had something to do with the creation of this storehouse. I think that is altogether likely, and they for their own convenience, in order to increase their dividends, thought best to have one of their own persons in control. Now, suppose it was Mr. Sutterle's own son, what difference does that make? Suppose he said, here, we will want to be constantly pledging our goods, and instead of sending them to other places where we have to pay high storage rates, suppose I place my son in business and he rents the Wood street warehouse, and we do our business through him, and put our goods in there, and take his warehouse receipt, and thus be able to raise money when we need it from the bank, there is no crime in that. I cannot see any fraud in it; I think Mr. Sutterle or Sutterle Company had the right to induce a clerk, if they chose, to take the responsibility and rent a storehouse for the purpose of giving them facilities for the borrowing of money on goods stored in it. They could not have done that if the goods were in their own possession. I think that is probably the truth of it. It is for you to say. I do not say it is true, but I think it is altogether likely that Keen-Sutterle Company did induce their clerk, Mr. Turtle, to rent that place as a warehouse for their special accommodation, and perhaps it was also understood that they were to be the principal customer, but I instruct you that a warehouseman if he has but one customer, if he keeps a warehouse for the purpose of storing goods and the profit there is in it, it is a warehouse just as much as if he had one hundred. It is not as easy to prove, but still he is a warehouseman if he receives goods on storage and charges storage for them, and that is his business; he is a warehouseman. I also charge you that it is not necessary that it be his only business. He may be a clerk, as well as a warehouseman; a lawyer may be a merchant, or he may be a banker, if he sees proper; he may be a preacher; it is not often, I believe, that he is, though. [It has been said

that he received no compensation. Well, I am not so sure of that. There are receipts in one book for $40.00 a month, it is stated, as storage paid. It must be conceded that Keen-Sutterle Company paid the storage by paying his rent. What if they did? He had his rent to pay. Suppose he goes to them and says, here is the receipt for the goods stored there; I am liable for the rent; won't you pay that storage for me? He was liable to the landlord, who could have levied upon the goods there for rent, and if they gave the money to him to pay the rent with, it was virtually paying that much storage. But that is not the question. Suppose they never paid the rent; suppose they never paid one cent, could he not have recovered it? It is not necessary that cash should pass; the right to cash in law is the same thing. So far as the parties are concerned, Keen-Sutterle Company recognized him as a warehouseman; they put the goods in his warehouse and he could have sued them for storage if payment was refused, or under the act of assembly, could have refused to let the goods go until the expenses were paid. He had the goods in his hands.] [17]

[Let us take another view: suppose the bank had done what the learned counsel says it should have done, before it advanced the money,—sent a man over to see if the goods were there; what would the result be? The man would have found a storehouse, he would have found the identical goods stored there, he would have inquired of Mr. Sutterle whether he was the keeper of the storehouse, and Mr. Sutterle would say, Certainly I am, and then he would have said, I want the proof of it; and Mr. Sutterle would say, there is my lease; that is my lease; it is in my name; and the man would say, You have pledged certain goods by this receipt; are those goods in Mr. Turtle's warehouse, the ones you pledge? and Mr. Sutterle would answer, They are; take your receipt and look at them; and when the man went there he would find the goods. What more could he do? If he had inquired, what information would he have got? Just what he had on the face of the papers. It, therefore, seems to me that the evidence is pretty strong that as far as the parties are concerned Mr. Turtle was a warehouseman; and if you find that he was, that is an end of the question. Then I charge you that the plaintiff has a better title than the defendants to this wool, and it will be your duty to find a verdict for the plaintiff.] [18]

Now take the other view. There is some evidence from
which the jury could find that there was some fraud in the
transactions between Mr. Turtle and Keen-Sutterle Company.
. . . . Now, first, if he was a warehouseman, the law has made
it a crime in him to let the goods get away from his possession
without having the receipt presented. . . . I say, therefore, if
he was a warehouseman, he is liable for permitting the goods
to get out of his custody without the receipts; if he was not
a warehouseman he is liable, for he is guilty of a fraudulent and
criminal conspiracy in holding himself out to the world as one
and giving a receipt upon which money has been given on a
false pretense. It is not wonderful that he is not inclined to
answer under the advice of his counsel. . . .

There is something we cannot get light upon, and I say it is
no wonder that the defendant contests the case, for there is
enough in it to make any man contest it. These circumstances
are all suspicious. Here is Keen-Sutterle Company depositing
goods and taking them away again without any receipt, from
one of their places, and it is pretty strong evidence that there
is something wrong, something fraudulent, and that there is
some intent to form a criminal conspiracy between him and
Mr. Sutterle; but there is no evidence at all that the plaintiff
had any intimation of that fact or of any circumstances such as
would induce it or put it on inquiry to ascertain before it passed
the money. That is the present condition of the case. If this
were a contest between the defendant and Keen-Sutterle Com-
pany there would be no difficulty about it, the defendant would
have title to the goods; if it were a contest between him and
another creditor he would have the goods; if it were a contest
between him and the sheriff he would have the goods, but it is
a contest between him and a man or an institution that claims
it has a prior right by virtue of these warehouse receipts.

[Now, I say, gentlemen, while there are indications enough
to induce us to believe there was something wrong between the
warehouseman and Keen-Sutterle Company, it will be for you
to say whether the transaction, so far as the papers were con-
cerned, were so reasonably fair as not to induce a person with
ordinary care to notice that there was anything wrong about
the transfers, and it seems to me that if there was nothing to
give any information to the bank that there was anything wrong,

it seems to me that its title is good; but I will leave it for you to say whether this man was a warehouseman.] [19] [If you come to the conclusion, under the circumstances, that he was not a warehouseman; that he never had control over the goods; that he was a mere man of straw, and that it was a fraud from the commencement, why I am inclined to think that the plaintiff here cannot recover. But, I say here was a warehouseman, here was a lease, and here the goods were actually on storage in a house at the time the receipt was issued and negotiated, and that it is the strong part of the plaintiff's case.] [20] The weak part of his case is that Mr. Turtle was a clerk under the control and employ of the Keen-Sutterle Company, and that he never had anybody there in charge; that the key was there; that any one could get the goods when they pleased and all that. There is some evidence that he had a desk there in which he kept the papers locked up. The only evidence I remember was that he had a desk in the Keen-Sutterle Company house and that he had the key for it, and that is the only evidence of it. [There was nobody on the premises to deliver goods; no watchman there. The goods were stored, and it seems that Keen-Sutterle Company could get them whenever they wanted them, but there is no evidence that the plaintiff knew that.] [21]

Still, if you come to the conclusion that this man was not such a warehouseman as described, there can be no recovery. That is to say, he must be a person who received goods on storage for compensation.

Verdict and judgment for plaintiff for $10,893.06. Defendants appealed.

*Errors assigned* among others were (16–21) above instructions, quoting them.

*N. Dubois Miller*, with him *Henry LaBarre Jayne, E. H. Hall* and *Biddle & Ward*, for appellants.—The plaintiff was bound to show that the man under whose receipt it claimed title was a warehouseman: Union Trust Co. v. Trumbull, 23 N. E. Rep. 355; Shepardson v. Cary, 29 Wis. 34; Bank v. Gayley, 92 Pa. 518.

In the present case the undisputed facts demonstrate that

Turtle was not a warehouseman within the language of the act: Bank v. Gayley, 92 Pa. 518.

The mere calling oneself a warehouseman, or the agreement between the alleged warehouseman and the alleged depositor does not make the paper writing which the one agrees to give and the other to accept a warehouse receipt: Mechanics' Trust Co. v. Dandridge, 37 S. W. Rep. 288; Geilfuss v. Corrigan 70 N. W. Rep. 306; Yenni v. McNamee, 45 N. Y. 614; Bucher v. Com., 103 Pa. 528.

*V. Gilpin Robinson* and *Samuel B. Huey*, for appellee.—The inquiries and precautions which the appellants claim should have been taken here would not have prevented what happened. The loss that must fall upon either the one or the other party to this cause is due to the dishonesty of Turtle or to some one whom he trusted, or to his negligence. The law can punish dishonesty. It can enact severe penalties to deter dishonest acts, but it cannot "secure innocent persons against losses from its multiform devices:" Burton v. Curyea, 40 Ill. 320.

Turtle was a warehouseman, prima facie, when he issued these receipts. Upon proof that the merchandise mentioned in the receipt was in his rented warehouse at the time the receipts were issued, the burden was shifted. It was then incumbent upon him who asserted the contrary to prove notice to the holder that they are not what they purport to be: Bucher v. Com., 103 Pa. 528.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898:

This belongs to the class of cases unfortunately too common, where one of two entirely innocent parties must suffer from the fraud of a third. The decision must therefore follow the better title by strict law. The wool in controversy was the property of the Keen-Sutterle Company who were the perpetrators of the fraud. The appellants have the actual possession, having received the wool in the regular course of business from the Keen-Sutterle Company and made advances upon it to nearly its full value. Their lien for repayment is now put in peril by an alleged prior transfer of title to the plaintiff by means of a warehouse receipt. The substantial question is whether the receipt was in fact issued by a bona fide warehouseman.

The Act of September 24, 1866, P. L. (1867) 1363, makes a warehouse receipt negotiable to the extent that the person taking a transfer of it by indorsement and delivery is to be deemed the owner of the goods therein specified. By the general law governing such instruments this means that the transfer of the receipt is a constructive delivery of the goods. If therefore the receipt under which the plaintiff claims was a valid warehouse receipt within the statute the plaintiff's title must prevail, notwithstanding the good faith and priority of the appellants' actual possession.

But in order to have this effect, the requisites of the statute must be complied with, and plainly the first of these is that there must be a receipt issued from a bona fide warehouse. The act does not prescribe any form of receipt, and it is conceded that the one in controversy is sufficient in that respect. It purports to be issued by a warehouseman, and to be for goods held on storage and deliverable on the order of the depositor and the return of the receipt.

Nor does the act define a warehouse or a warehouseman, but uses the latter word in connection with "wharfinger or other person" (ejusdem generis, Bucher v. Com., 103 Pa. 528), in its ordinary signification of one who carries on the business of receiving and keeping goods on storage for the owners, for compensation. The act prohibits the issue of a receipt unless the goods shall have been actually received into store or upon the premises of the warehouseman; the issue of any second or duplicate receipt while the first is outstanding, without writing the word duplicate across the face of the second; the delivery of any goods receipted for except on surrender of the receipt; and the sale, incumbrance, etc., by the warehouseman of goods receipted for. These provisions plainly contemplate that the warehouseman shall be one engaged in the business, and also that he shall be another than the owner of the goods. A large part of the security of the holder of the receipt for the actual production of the goods when called for is the business interest and good faith of the warehouseman, and the penal consequences of any breach of duty by him. This security would be greatly diminished, if not rendered worthless, if any owner could choose to say his goods were on storage with himself and issue receipts which should pass from hand to hand for value,

while the goods remained under his own control, or subject to
levy by his creditors. On this subject, see the remarks of WINS-
LOW, J., in Geilfuss v. Corrigan, 70 N. W. Rep. 306, 311, and
of GUFFEY, J., in Mechanics' Trust Co. v. Dandridge, 37 S. W.
Rep. 288 (Ct. of App. of Ky.).

In the present case one Turtle issued the receipt in question,
in sufficient form as already said, purporting to be from "Tur-
tle's Warehouses, 220, 222 and 224, Wood St.," and plaintiff
at the trial showed the issue of a number of similar receipts by
Turtle, over a period of about two years ; the negotiation of loans
by several New York banks to the Keen-Sutterle Company, on
these receipts ; and the lease by Turtle of the premises on Wood
street in his own name as a warehouse. Many exceptions are
raised by appellants to the method of proof of these facts, and
to their relevancy. But it is not necessary to discuss them,
though some of them are clearly well founded. For present
purposes it may be conceded that, standing alone, the facts so
proved would make out a prima facie case of warehouse re-
ceipt, though the case would be weak in the respect that nearly
all the evidence was of the kind that may be called corrobora-
tive rather than positive in character.

But the above stated facts shown by plaintiff did not stand
alone. On the contrary they were accompanied by an array of
others, undisputed, or so feebly contested as to be practically
admitted, that deprived them of all real weight. It appeared
that Turtle, during all the time he was nominally keeping the
warehouse and issuing receipts for goods on storage there, was
a clerk in the employ of the Keen-Sutterle Company, at a salary ;
that the rent of the so-called warehouse was not paid by Turtle,
but by the Keen-Sutterle Company or by F. W. Sutterle, one
of the partners, and the rent due to Turtle from the subtenants
of a part of the warehouse was not paid to him but to the Keen-
Sutterle Company or F. W. Sutterle, and the only explanation
given was that there was some private arrangement, not dis-
closed, between Turtle and Sutterle, on this subject; that no
storage charges were paid by the Keen-Sutterle Company to
Turtle on account of this warehouse, nor any credit given him
on their books ; that no persons other than the Keen-Sutterle
Company deposited any goods in the so-called warehouse,
though a few receipts were issued in the name of J. B. Moors

& Company, under some arrangement with the Keen-Sutterle Company, which the learned judge declined to permit to be inquired into; and that Turtle had no sign on the warehouse to indicate his proprietorship, kept no books of the business except a book of blank receipts, had no office or even a desk in the warehouse, did not keep the key in his possession, was rarely there, and left the whole charge, including the depositing and removal of goods, to the employees of the Keen-Sutterle Company. On these facts it is perfectly clear that there was no real warehouse at all in the case and that Turtle was a mere employee or man of straw used by the Keen-Sutterle Company to cover their own operations with their own goods.

The counsel for appellee have argued very strenuously the proposition that if Turtle held himself out to the world as a warehouseman, and plaintiff had no knowledge to the contrary, it would be sufficient to put plaintiff under the protection of the statute. And the learned court below seems to have fallen into the same view. But this is not enough. To defeat the title of defendants as a consignee without notice, for value, and in good faith, Turtle must have been a warehouseman in fact, and plaintiff's title derived through an actual valid warehouse receipt. It is not a question of good faith, or even of diligence, on plaintiff's part, but of the possession of a good title by means of a valid and genuine receipt. This the plaintiff has failed to prove. The paper given to it was not such a receipt, but a fraudulent imitation, and the bank must, unfortunately for it, bear the loss. On the practically undisputed facts the verdict should have been directed for defendants.

Judgment reversed.