## Tunnell's Estate

*Rambo, Rambo & Mair,* for exceptants.
*Francis Shunk Brown,* contra.

Bok., J., June 19, 1936.—There are only two questions now to be decided: first, whether the testator impressed a trust or made a testamentary disposition of the various sets of bonds in question, and, second, whether the widow is entitled to her intestate allowance of $5,000 under the will as written.

On the first point we are clear that the auditing judge was correct in holding that Tunnell disposed of these bonds testando. He has found as a fact that the testator's intention was testamentary, and in view of such finding the assaults of exceptants are of little avail. There is ample evidence to sustain it. We cannot declare the testator's actions to be this or that as a matter of law, without regard to his intention as expressed by his actions; nor can we disregard some of his actions in order to arrive at a state of intention which fits any particular theory. Both lines of cases that were cited to us in argument are good law, but the only element which can swing the bal-

ance of our judgment toward one of them is the testator's intention. That element is factual and has been determined.

It is likely that the testator was anxious to keep his property clear of the claims of his wife, from whom he was estranged and who had a support order against him, and yet retain control of it himself. It is also likely that he had the subtle idea of avoiding inheritance taxes by creating trusts. If so, he misconceived the mechanics of effecting it. He had the bonds registered in his name "in trust" for his relatives, but that is the only single action he took which supports the trust theory. In each of the letters which he wrote to the intended beneficiaries there appears the thought: "at my death they [i. e., the bonds] would become yours". In the two letters which he wrote to the Philadelphia National Bank he requested registration as trustee, stated that he was to retain full power, and added the significant phrase, "it being your duty to consult no one but me *so long as the bonds stand in my name as trustee.*" (Italics ours). Further in the same letters he acknowledged the duty of transferring the bonds to the beneficiaries and extended it to his personal representatives should he be dead. He never transferred or delivered them. He told Tash, who was exceptants' witness, that the bonds were to go to the beneficiaries "when he passed on." There is evidence that he could transfer the registered bonds at will, without the consent of the beneficiaries.

It is not without importance that he executed no deed or declaration of trust and created no separate account for the income accruing from the bonds. He received the entire income, but there is no word of what he did with it. He was careful to keep the arrangement revocable. Each so-called trust was as ambulatory as though it were a will.

In view of this, we feel there is no particular magic in merely registering the bonds "in trust". Tunnell obviously wanted to retain all the incidents of ownership, possession

and control and yet evade his wife and the inheritance tax. We must interpret in accordance with his intent, which was aimed to retain his own property, rather than with his method, which was aimed to preserve it from his wife and from diminution by taxation, and was faulty in its execution. No intended beneficiary could have enforced any rights whatever against Tunnell as fiduciary during his lifetime, as each one had been plainly told that he or she would get the bonds only when Tunnell died, and Tunnell could terminate the whole arrangement whenever he chose.

In §57 of the A. L. I. Restatement of the Law of Trusts this appears:

"(2) Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust . . . the disposition so far as it is intended to take effect after his death is testamentary."

We therefore hold that the testator created no trusts as to the bonds in question, and that his arrangement was a testamentary one which was revoked by his later will: Turner et al. v. Scott, 51 Pa. 126; Frederick's Appeal, 52 Pa. 338; Trough's Estate, 75 Pa. 115; Girard Trust Co. v. Mellor, 156 Pa. 579; Beaumont's Estate, 214 Pa. 445; Hurley's Estate, 16 D. & C. 521.

As to the second point, we are of opinion that the widow is not entitled to her allowance of $5000. Section 2 (a) of the Intestate Act of June 7, 1917, P. L. 429, as amended by the Act of July 7, 1917, P. L. 755, allows it only in cases of actual intestacy. There is no intestacy here, but a will which uses "the laws of the State of Pena" as a means of describing the system by which the testator desired his estate to be distributed. Had the will made specific mention of the Intestate Act, as in Carrell's Estate, 264 Pa. 140, and Morris' Estate, 298 Pa. 25, a different situation would be presented. In Dougherty's Estate, 117 Pa. Superior Ct. 510, the reference was to "the laws of Penn-

sylvania", as it is here, and the court awarded the widow half the estate without the $5000 allowance. That case controls us, for the reasons given in the opinion of Baldrige, J., as follows on page 512:

"We are without authority to apply the provisions of the Intestate Act, unless the will so directs. 'The full share of the proceeds of my real estate and personal property to which he is entitled under the laws of Pennsylvania' is the expression used, and it must control. That does not say, nor can we construe it to say that the husband is entitled 'under the intestate laws.' Taking the will, therefore, as written, what construction is to be put on the words 'under the laws of Pennsylvania'? In case of testacy, if one takes under the will, he gets in accordance with its provisions; if against the will, in the event of no issue, then he gets one-half the estate. In other words, the surviving spouse does not get under the laws of Pennsylvania, in case of testacy, more than one-half the estate, unless otherwise provided in the will."

See also Erk's Estate, 311 Pa. 185.

Judge Klein concurs in our decision of this point.

The exceptions concerning the widow's allowance are sustained and her claim for $5000 is denied. All other exceptions are dismissed. The adjudication as modified is confirmed absolutely.