## FIRST CAMDEN NAT. BANK & TRUST CO. v. J. R. WATKINS CO.

### No. 7699.

Circuit Court of Appeals, Third Circuit.

Sept. 8, 1941.

Cuthbert H. Latta, Jr., of Philadelphia, Pa. (Mark Willcox, Jr., Richard Hay Woolsey, and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., on the brief), for appellant.

Richardson Dilworth, of Philadelphia, Pa. (Harry A. Kalish, Harold E. Kohn, and Murdoch, Paxson, Kalish & Green, all of Philadelphia, Pa., on the brief), for appellee.

Before CLARK, JONES, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the not unfamiliar situation of the loss wrought upon innocent parties by the wrongdoing of a third. The plaintiff is the First Camden National Bank and Trust Company of Camden, N. J., which advanced money upon the security of a warehouse receipt. The defendant is the J. R. Watkins Company of Winona, Minnesota, a good faith purchaser of goods which the plaintiff claims were effectively pledged to it by delivery of the warehouse receipt.

The applicable facts may be shortly stated. J. N. Limbert & Company, hereinafter called "Limbert," was an importer of vanilla beans. Limbert leased a floor in a warehouse in Philadelphia known as Bailey Warehouses. A quantity of vanilla beans arrived in Philadelphia on July 21, 1936, consigned to Limbert. These beans were taken to the floor in the Bailey Warehouses occupied by Limbert. This floor had one portion of free space and another division which was kept under the control of the United States, being a bonded warehouse part of the floor. On July 29, 1936, W. A. Bailey, the proprietor of the warehouse, issued a non-negotiable warehouse receipt for the goods, in standard form. This receipt made out in the name of the plaintiff bank was pledged by Limbert to the bank as security for a loan. A few days subsequent to this transaction, Limbert removed a portion of the beans from the warehouse and sold them to the defendant who received and paid for them in good faith. The bank was not paid. On May 20, 1938, when it sought to take possession of the beans which were supposed to be represented by the warehouse receipt, the facts came to light.

The defendant, of course, does not deny the well settled legal proposition that ordinarily when one buys and consumes chattels which belong to another he becomes a converter and must pay for his

conversion regardless of his good faith.[1] The plaintiff claims that this governs the case. It says that the chattels were pledged to it by means of delivery of this warehouse receipt and that its interest in them is not divested by the subsequent sale by Limbert to the defendant. The defendant, however, says an entirely different rule of law is applicable here. It points out the indisputable rule that when one issues a warehouse receipt for goods which he does not have, the most that another taking that receipt can get is a right against the person who issued the receipt. Then the defendant makes that proposition applicable to this case by saying that Bailey, when he gave this warehouse receipt, did not, in fact, have these goods in his possession.

It is clear that if Bailey did not have the goods his warehouse receipt was ineffectual and the plaintiff bank gets no claim to the goods.[2] It is equally clear, that if Bailey did have the goods and gave the receipt for them, the subsequent purchase and use of them by the defendant subjected it to liability. The controversy turns then upon the question of who had the goods at the time Bailey gave the warehouse receipt.

The Limbert lease was in the ordinary form of real estate leases. By its terms it granted to J. N. Limbert & Company, as lessee, the whole ninth floor of building No. 11 in the Bailey Warehouses. The Limbert name appeared upon the door, which was the only entrance to this floor. By the terms of the lease the lessor was to furnish elevator service for the lessee; also platform space for the reception and shipment of goods. The only reserved rights of the lessor to go into the premises were for the purposes of inspection and repair.

We see no escape from the conclusion that this lease gave Limbert exclusive possession of the specified floor in the Bailey Warehouses.[3] Goods on this floor were in the possession of Limbert and not Bailey. The plaintiff endeavors to minimize the force of these circumstances by the argument that whatever words the lease may have contained, the practice of the parties was that Bailey exercised substantial control over all the premises and that the lease was given only so that Limbert and his workmen could do the work necessary upon the merchandise prepared and offered for sale. We do not find evidence which supports this conclusion upon the facts nor evidence upon which a jury could find that these beans were in Bailey's and not in Limbert's possession.

It is argued that the following testimony by Bailey was evidence of his possession:

"Q. So that you thought the amount of supervision that you were exercising was all that was necessary for the safety of the goods; wasn't that right? A. Right."

But this reference to the safety of the goods is meaningless as to the question of possession and, furthermore, there is this testimony by Bailey directly on the question of supervision and control:

"Q. Did you exercise supervision over what went on on that floor? A. No, we had no supervision over that floor.
* * *
"A. I do not think we got in that floor excepting something that was necessary

---

[1] Restatement, Torts § 229. Carey v. Bright, 1868, 58 Pa. 70.

[2] "The fundamental idea of the pledge is possession. * * *" Restatement, Security (Tent. Draft No. 1) (incorporated into Proposed Final Draft) p. 9. This is the rule in Pennsylvania where the operative facts occurred, Girard Trust Co. v. Mellor, 1893, 156 Pa. 579, 27 A. 662; Bank of North America v. Penn Motor Car Co., 1912, 235 Pa. 194, 83 A. 622; and Davis v. Billings, 1916, 254 Pa. 574, 99 A. 163; and it is the general rule, Security Warehousing Co. v. Hand, 1907, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789. The rule is specifically applied in cases involving warehouse receipts in McGaffey Canning Co. v. Bank of America, 1930, 109 Cal.App. 415, 294 P. 45; In re Rodgers, 7 Cir., 1903, 125 F. 169. Cf. Union Trust Co. v. Wilson, 1905, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154; Security Warehousing Co. v. Hand, supra; American Can Co. v. Erie Preserving Co., 2 Cir., 1910, 183 F. 96; Tradesmen's National Bank v. Jagode, 1898, 186 Pa. 556, 40 A. 1018, 65 Am.St.Rep. 876; and Moors v. Jagode, 1900, 195 Pa. 163, 45 A. 723.

[3] Compare J. H. & C. K. Eagle, Inc., v. Kunkle, 1923, 278 Pa. 190, 122 A. 276, where a lease by the pledgee to the pledgor was contemplated but was never entered into and for this reason the court held that possession was not in the pledgor.

for us to fix—sprinkler pipes or something else.

* * *

"(The stenographer read the following question: 'And after issuing the receipt you knew it was the duty of Bailey Warehouses to exercise supervision of these goods so that they would be held for the purposes of the First Camden Bank, did you not?')

"The Witness: I should say, correctly speaking, that we were to supervise them, but we did not supervise them.

* * *

"Q. Mr. Bailey, you testified that after a certain time Limbert himself took the beans up and down in the elevator; is that correct? He handled the beans himself? A. He handled them out himself; we handled them in.

"Q. When did he start handling them out? A. I do not know.

"Q. Would you be able to tell us approximately when? A. Any time?

"Q. I mean when they started that practice—was it before 1935? A. Yes.

* * *

"Q. You knew they were shipping beans? A. Oh, yes, they must have been.

"Q. And doing all the work themselves—taking them down themselves? A. Yes."

In addition, the plaintiff's own witness testified as follows:

"Q. Now were there any employees of the Bailey Warehouses stationed on your floor to supervise the movement of vanilla beans in or out? A. None at all.

"Q. Can you tell us whether or not shipments going out of Bailey's Warehouse—were they checked by employees of the Bailey Warehouses? A. Never."

It appears, therefore, that Bailey gave warehouse receipts for goods which he did not have. Such a receipt gives the plaintiff bank nothing except a claim against Bailey.[4] Limbert, in possession of goods which he owned, sold them to the defendant, who paid for them. The defendant's title is good and the disappointed pledgee cannot make him pay again.

The judgment of the District Court is reversed and the case is remanded with directions to enter judgment for the defendant.

---

[4] The claim of the warehouseman against the pledgor and the claim of the bank against the warehouseman do not result in any imposition of liability on the bona fide purchaser from the pledgor who has been left in possession. "They are cases in which the possession of the pledge is, *by the agreement of the parties*, to remain with the pledgor. It is held that as the pledgor is bound, notwithstanding this provision of the contract, so all are bound who claim under him, except purchasers for value and without notice." Collins's Appeal, 1883, 107 Pa. 590, 605, 52 Am.Rep. 479.