FIRST NAT. BANK OF NEW KENSINGTON v. PENNSYLVANIA
TRUST CO.

(Circuit Court of Appeals, Third Circuit. September 1, 1903.)

No. 19.

1. BANKRUPTCY—VALIDITY OF LIEN—PLEDGE.

A bank made a loan to a steel company, taking in pledge, as security therefor, and for any other debt which might be subsequently contracted, a quantity of steel billets, which were conveyed to it by bill of sale, set apart on the premises of the company, and marked with signs as the bank's property. A part of the note was paid, and another loan was subsequently made within four months prior to the company's bankruptcy. Before that time, the signs indicating the bank's ownership had been removed without its knowledge, but it caused them to be replaced after the making of the second loan, and before the bankruptcy. *Held*, that such removal did not impair its lien as security for its entire claim as against the bankrupt or its receiver or general creditors.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

John T. Moore, for appellant.
J. Rodgers McCreery, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. It appears from the record that on August 30, 1901, the appellant herein discounted a promissory note of the Hussey Steel Company for $4,000, payable on demand, and took as security therefor 200 tons of steel billets. Incorporated in the note was the provision that the said collateral was to stand as security for the "payment of this or any other liability or liabilities, contingent or absolute, of ours (the Hussey Steel Company) to the holder hereof, now due or that may be hereafter contracted." On the same day the Hussey Steel Company executed and delivered to the bank a bill

of sale, absolute on its face, of said billets, which by reason of their weight and bulk were permitted to remain on the premises of the vendor. The billets, however, were marked by a sign, posted on the several piles, setting out that they were the property of the First National Bank of New Kensington. In October, 1901, the steel company paid one-half of said note, and the bank released one-half of said billets. On January 20, 1902, the bank discounted another note of the steel company for $2,000. Neither the last-named note nor the balance of $2,000 on the note of August 30, 1901, has been paid. The record fails to show how long the signs giving notice of the change of ownership of said billets, which were placed thereon August 30, 1901, remained in position; but the testimony of Mr. Lyon, who entered the employ of the steel company October 5, 1901, is that at that date they were not to be seen. The evidence fails to show that the bank had any knowledge of the removal or destruction of the signs until some time in March, 1902, when they caused the billets to be re-marked, by having their initials painted on the same. On April 23, 1902, the Hussey Steel Company was adjudged bankrupt upon a petition filed by creditors March 31, 1902, and afterwards the Pennsylvania Trust Company was appointed receiver. Upon the receiver's refusal to permit the bank, on request, to remove the billets, a rule to show cause was granted why the bank should not be permitted to do so, and this rule was afterwards discharged, and appeal taken.

It cannot be disputed that on the 30th day of August, 1901, when the bank discounted the note of the steel company, and took the bill of sale of the billets, it acquired a good and valid title thereto as between itself and the steel company. To complete its title or lien as against creditors and strangers, the bank was not obliged to take the billets into actual possession; it was sufficient to give notice of their lien or change of ownership. This they did by posting on the billets, which were in distinct and separate piles, the sign to which reference has been made, so that on August 30, 1901, the title of the bank or its right to a lien on the billets was good as against all of the world. If this situation had continued until after the adjudication of bankruptcy, no question could have arisen as to the title of the bank or the validity of its lien. The transaction was one made in the ordinary course of business, without fraud either in fact or in law; it was for a present valuable consideration, and completed more than four months before the adjudication of bankruptcy. The subsequent advance of $2,000 in January, 1902, was made by the bank to the steel company in good faith, in accordance with the agreement made between the parties in August, 1901, that the billets should stand as security for any advance subsequently made. Though this loan was effected within four months of the adjudication of the bankruptcy, it does not constitute a preference, within the meaning of the act. "Prior to adjudication of bankruptcy, a party may deal with his property as he chooses, provided there be no purpose to defraud or delay his creditors, or give a preference to any one, and the value of his estate is not thereby impaired." Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816. The change of ownership, then, having been legally effected, how could the steel company, the vendor or pledgor, again become entitled to the property

without repayment of the purchase price, or the amount advanced thereon. The only answer suggested is by the removal of the signs indicating ownership, and the failure of the bank to replace them from October 5, 1901, to a time within four months of the adjudication. It may be that an innocent purchaser for value, or a judgment creditor without notice, might, by execution and levy, have acquired a prior lien; but surely, as against the pledgor, the bank's lien remained, notwithstanding the removal of the signs. Neither the general creditors nor the receiver of the bankrupt could acquire any better title to any property of the bankrupt than the bankrupt himself had at the time of filing the petition in bankruptcy, and therefore the lien was good as against them. The receiver in bankruptcy, standing in the place of the trustee, takes the property in question "as a purchaser from the bankrupt, with notice of all outstanding rights and equities." Whatever the bankrupt might do to make the property available to the general creditors, he may do nothing more, except that he may sue for and recover that which was conveyed in fraud of creditors. Dudley v. Easton, 104 U. S. 99, 26 L. Ed. 668. It is not suggested that the bank had any knowledge of the removal of the signs, or that it did not replace them so soon as their removal was brought to its notice. The effect of a re-marking of the billets was not to create a new lien, nor to acquire a preference for an antecedent debt between the parties. The lien acquired August 30, 1901, had not been lost, because no rights of third parties had intervened. The bank, under its contract, had a right of possession to the billets as security for the payment of debt, and could not be held guilty of securing a preference by exercising that right within four months preceding bankruptcy. Sabin v. Camp. (C. C.) 3 Am. Bankr. R. 578, 98 Fed. 974.

We are of the opinion that the bank acquired a valid lien on the billets for the amounts advanced by it to the steel company on both of its promissory notes, and that the lien was not lost by the accidental removal of the marks placed on the same. "Until the loan shall be paid, the pledgee is entitled to the possession of the property which he holds under a valid pledge, as security for his debts against the pledgors, notwithstanding a subsequent adjudication of bankruptcy against them." Yeatman v. Savings Institution, 95 U. S. 764, 24 L. Ed. 589.

The order of the district court should be reversed, and the rule to show cause made absolute.