## SECURITY WAREHOUSING COMPANY *v.* HAND.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 229.    Argued March 7, 8, 1907.—Decided May 27, 1907.

The general law of pledge requires possession and it cannot exist without it, and this is the law in Wisconsin.

Where there is no delivery or change of possession receipts issued by a warehouse company are not entitled to the status of negotiable instruments, the transfer of which operates as a delivery of the property mentioned therein. *Union Trust Co.* v. *Wilson*, 198 U. S. 530, distinguished.

Although the assignee or trustee in bankruptcy stands in the shoes of the bankrupt, and property in his hands unless otherwise provided in the bankrupt act is subject to all the equities impressed upon it in the hands of the bankrupt, on the facts in this case and the law of the State there was no valid pledge of, and no equitable lien on the merchandise in favor of the holders of warehouse receipts, which take precedence of the title of the trustee.

The above-named appellants have appealed from a judgment of the Circuit Court of Appeals of the Seventh Circuit, affirming a decree of the United States District Court for the Eastern District of Wisconsin dismissing certain petitions of the appellants for want of equity. 143 Fed. Rep. 32.

Certain creditors filed a petition in bankruptcy October 5, 1903, against the Racine Knitting Company, a company en-

gaged in manufacturing hose and other knit goods, with factories at Racine and Stevens Point, Wisconsin. The company was, on the twenty-sixth of October, 1903, duly adjudged a bankrupt, and the appellees were appointed receivers and were later elected trustees. The appellees asserted the right to certain merchandise covered by receipts issued by the appellants, the security company, which company thereupon filed in the bankruptcy court an intervening petition asserting its exclusive possession and control of the merchandise in question and the issuing of its receipts therefor to the knitting company, and their negotiation by it prior to its bankruptcy, and that those receipts were given to the other appellants in good faith in due course of business as security for loans. The intervening petitioner alleged that the appellees were claiming title to the merchandise and were obstructing the petitioner in its possession, and the prayer was for an order that the appellees be restrained from interfering with the petitioner in its custody and control of the property. The other appellants then intervened and also set up the same facts, and prayed that the appellees might be restrained from interfering with the security company in delivering the merchandise to the petitioners, and from asserting any right or title to the property as against them. Issues were joined and the matters were referred to the referee, who reported his findings of fact. From these findings it appeared that the Security Warehousing Company was a corporation of the State of New York, duly licensed to do business in the State of Wisconsin, and that it was engaged in the business of "field warehousing," so called; that it owned no warehouse of its own and occupied no public warehouse at any place. The warehousing company leased certain premises from the knitting company in Racine, in the State of Wisconsin, and also certain premises at a place called Stevens Point, in the same State. These two places were occupied by the knitting company with their goods to be sold, and the goods were placed on the premises really occupied by the knitting company,

although in form leased by it to the warehousing company, and the so-called warehouse receipts were given to the knitting company by the warehousing company, acknowledging the receipt of the property at such places. There was no change of possession in fact, and scarcely any in form. These receipts were in turn pledged by the knitting company to various banks, and moneys obtained pon the security of such receipts from them. The general character of business of this form is stated in *Union Trust Company* v. *Wilson*, 198 U. S. 530, but the particular facts in this case, given in detail as findings by the referee and adopted by the District Court and Circuit Court of Appeals, may be found in 143 Fed. Rep. 32, *supra*. Reference is made to that report for the findings of the referee. The report shows a radically different state of facts from the *Wilson* case.

Mr. *Henry S. Robbins*, for appellants, submitted:

This case is not distinguishable from the case of *Union Trust Co.* v. *Wilson*, 198 U. S. 530.

The fact that the boards constituting the enclosure were four to six inches apart instead of being closely fitted, as in the *Wilson* case, 198 U. S. 530, seems too trivial to require discussion. This was more favorable to publicity than a tightly fitted enclosure, as it enabled one seeing the enclosure from the outside to see also the signs that were within. Anyone making the most superficial inspection could see the enclosure, and the locked door, and were without being put upon notice of the warehousing company's control.

Nor does a substantial difference between the two cases arise out of the fact that in the case at bar the custodians appointed by the warehousing company to watch the property and release it upon the return of the receipts, were also employés of the dealer. *Sumner* v. *Hamlet*, 12 Pick. 76.

Nor does any material difference between this and the *Wilson* case arise out of the fact found in the case at bar by the master that on three or four occasions "manifested goods

were taken out of the enclosures by the custodian" and other goods were substituted therefor. The quantities thus taken out were trifling. But whatever be the law as to chattel mortgages, substitutions—especially such trifling ones—do not invalidate a pledge. *Blydenstein* v. *N. Y. Security Co.*, 67 Fed. Rep. 469; 15 C. C. A. 14; *Sumner* v. *Hamlet*, 12 Pick. 76; *Clark* v. *Iselin*, 21 Wall. 360; Colebrooke on Collateral Securities, 2d ed. § 15; *Sawyer* v. *Turpin*, 91 U. S. 114; *Cook* v. *Tullis*, 18 Wall. 332.

Nor is the *Wilson case* inapplicable to the case at bar because the former arose in Illinois and the latter in Wisconsin.

The law of Illinois abhors secret liens as much as does that of Wisconsin, and this was pressed upon the attention of this court in the *Wilson case*. See *Funk* v. *Staats*, 24 Illinois, 632; *Harkness* v. *Russell*, 118 U. S. 663.

In both States, as well as generally, a change of possession is essential to the validity of a pledge or warehouse receipt.

The appellant creditors acquired at least equitable liens, which were superior to the title of the trustees in bankruptcy. If there was not a sufficient change of possession to support a pledge or warehouse receipt, still the delivery by the knitting company of these receipts as security for loans created equitable liens. *Union Trust Company* v. *Trumbull*, 137 Illinois, 146.

The receipt holders here were unacquainted with the physical nature of the storage or the methods of the Security Warehousing Company. Equitable liens have been upheld by this court in *Hauselt* v. *Harrison*, 105 U. S. 401; *Walker* v. *Brown*, 165 U. S. 654. Equitable liens are recognized in Wisconsin. *McDonald* v. *Daskam*, 116 Fed. Rep. 276; *S. C.* 53 C. C. A. 554.

An equitable lien is superior to the title of the trustee in bankruptcy—so held under the act of 1841. *Fletcher* v. *Morey*, 2 Story, 555; *S. C.* Fed. Cas., 4,864; *Winsor* v. *McLellan*, 2 Story, 492; *S. C.* Fed. Cas., 17,887. And under the act of 1867. *Hauselt* v. *Harrison*, 105 U. S. 401; *Yeatman* v. *Savings Inst.*, 95 U. S. 764; *Stewart* v. *Platt*, 101 U. S. 731.

The present bankrupt act did not intend to change this rule.

Reading clauses (a) and (d) of § 67 together, as they should be, the proper construction is that liens "accepted in good faith," and which are of a nature to be recorded, such as chattel mortgages, are not good against the estate unless recorded; but that liens accepted in good faith, but not of a nature to be recorded, shall be unaffected by the bankrupt act, although not superior to writs of attachment and execution.

There is a clear distinction between a fraudulent conveyance —to avoid which both parties must have participated in the fraudulent intent—and an equitable lien in which, as at bar, the creditor is not a participant in any legal or actual wrong doing. See *York Mfg. Co.* v. *Cassell*, 201 U. S. 344; *Thompson* v. *Fairbanks*, 196 U. S. 516–520; *Hewit* v. *Berlin Works*, 194 U. S. 296; *In re Economical Printing Co.*, 110 Fed. Rep. 514; *S. C.* 49 C. C. A. 133.

*Mr. John B. Simmons* for appellees:

The receipts issued by the Security Warehousing Company were not warehouse receipts within the legal or commercial signification of the term, and their endorsement in blank and delivery as collateral in no way affected the title to the goods of the bankrupt.

In controversies of this sort, involving the validity of transfers of property by warehouse receipts, chattel mortgage, and the like, the law of the State where the property is situated must govern. *In re St. Paul & Kansas City Grain Co.* (Minn.), 94 N. W. Rep. 218; *Hallgarten* v. *Oldham*, 135 Massachusetts, 1; *Etheridge* v. *Sperry*, 139 U. S. 276, 277; *Bamberger* v. *Schoolfield*, 160 U. S. 149; *Hartford Ins. Co.* v. *C., M. & St. Paul Ry. Co.*, 175 U. S. 91.

The facts shown by the record do not establish the existence of valid liens by way of pledge. *Union Trust Co.* v. *Wilson*, 198 U. S. 530, distinguished.

In respect to a pledge, as distinguished from a mortgage

of personal property, delivery of possession is not a consequence, but the very essence of the contract. *Lee* v. *Bradlee,* 8 Martin (O. S.), La. 20.

To comply with the law, the possession, as in a case of pledge, must be exclusive. Not only must possession be taken, but that possession must be exclusive of the vendor, and concurrent possession will not do. *McKibbon* v. *Martin,* 3 Am. R. 588, 593. See *Hale* v. *Sweet,* 40 N. Y. 97, where the mortgagee of a vessel employed a man to take charge of and run her, but clearances were made in the name of the mortgagor who also collected the freight.

A similar case of an attempted pledge, is *Wickham* v. *Levistone,* 11 La. Ann. 702. And supporting the same proposition are: Jones on Chattel Mortgages, § 185; *Grant* v. *Lewis,* 14 Wisconsin, 487; *Orsen* v. *Sherman,* 27 Wisconsin, 501; *Schneider* v. *Kraby,* 97 Wisconsin, 519; *Pierce* v. *Kelley* (Ore.), 34 Pac. Rep. 963; *Hale* v. *Sweet,* 40 N. Y. 97; *Steele* v. *Benham,* 84 N. Y. 634.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

A careful reading of the findings of the referee and of the evidence upon which they were based satisfies us that they ought to be approved. The findings show that the receipts of the warehousing company were not entitled to the status of negotiable instruments; the transfer of which operates as a delivery of the property mentioned in them. Upon that question the case is sufficiently stated in the opinion of the court below, wherein it was said that the "receipts themselves would put the holders on notice of the facts."

If the receipts were not negotiable instruments, it is contended that the transactions showed a valid pledge of the property to some of the appellants, and hence they are entitled to its possession until they are paid the debts due them from the bankrupt. Whether there was a sufficient change of

possession of the thing pledged to render the same valid under the law of Wisconsin, we think was correctly answered in the negative by the courts below. *Geilfuss* v. *Corrigan*, 95 Wisconsin, 651, 665, 669. The general law of pledge requires possession, and it cannot exist without it. *Casey* v. *Cavaroc*, 96 U. S. 467. There was scarcely a semblance of an attempt at such change of possession from the hands of the knitting company to the hands of the warehousing company. Actual possession of the property in question was exercised by and existed with the knitting company substantially the same after the issuing of the receipts as before. It is a trifling with words to call the various transactions between the knitting company and the warehousing company a transfer of possession from the former to the latter. There was really no delivery, and no change of possession, continuous or otherwise. The alleged change was a mere pretense, a sham. Upon the subject of change of possession the opinion of the Circuit Court of Appeals contains the following statement of fact: "In the present case the main office of the security company was in New York; the nearest district office was in Chicago; from there the receipts were issued; and in Wisconsin the security company had no office and no warehouses, unless the enclosures within the buildings of the knitting company at Racine and Stevens Point be counted such. The receipts themselves would put the holders thereof on notice of these facts. And at Racine and Stevens Point the security company gave no evidences to the public of its presence. No signs were displayed to the passer-by. No business was sought from the public. The only property within the enclosures was the knitting company's. The knitting company did not want storage room, but collaterals, which the security company agreed to furnish for a commission upon the amount thereof plus all expenses. The security company's only agents on the scene were the agents of the knitting company, who cared for and shipped out its goods. That this was the only business contemplated is disclosed by the agreement that the knitting

company should be restored to full possession of the premises at any time it returned the outstanding receipts. This, in our judgment, was not warehousing within the law of Wisconsin."

Also: "So far from the security company's maintaining an open, exclusive, unequivocal possession during the two years this arrangement was carried on, it seems to us that the security company might as well have been eliminated, and the knitting company have employed its own stockkeepers and shipping clerks as custodians for intending lenders, directly, instead of indirectly through the security company. In that view this becomes one of the cases 'in which the exclusive power of the so-called bailee, *Union Trust Co.* v. *Wilson*, 198 U. S. 530, 537, tapers down to nothingness. *Drury* v. *Moors*, 171 Massachusetts, 252; *Bank* v. *Jagode*, 186 Pa. St. 556.' "

The actual transactions in the case at bar differ radically from the facts as stated in *Union Trust Company* v. *Wilson*, *supra*. The court there held that there was sufficient proof to show a change of possession and that the transaction was valid within the law of the State of Illinois. Assuming the law of Wisconsin to be the same on the subject of possession by the pledgee of the property pledged, the facts in this case are so different from the *Wilson* case as to prevent that case from forming a foundation for holding there was a sufficient change of possession here to make the pledge a valid one.

We are satisfied with the decision of the courts below upon the merits.

There is, however, an important matter which has been raised by the appell nts aside from the merits. That is, whether a trustee in bankruptcy can question the validity of these receipts, or the sufficiency of the alleged transfer of the property belonging to the bankrupt knitting company, to constitute a pledge of such property. The right is denied by the appellants, and it is contended that the transfers were valid between the parties; that the trustee in bankruptcy takes only the title and right of the bankrupt, and therefore he cannot assert a right not possessed by the knitting company.

.It is no new doctrine that the assignee or trustee in bankruptcy stands in the shoes of the bankrupt, and that the property in his hands, unless otherwise provided in the bankrupt act, is subject to all of the equities impressed upon it in the hands of the bankrupt. This has been the rule under former acts and is now the rule. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296; *Thompson* v. *Fairbanks*, 196 U. S. 516, 526; *Humphrey* v. *Tatman*, 198 U. S. 91; *York Manufacturing Company* v. *Cassell*, 201 U. S. 344, 352.

. In the *Hewit case* there was a sale of property to the bankrupt upon condition that the title should not pass until the property was paid for. Such a conditional sale was good in New York State, where the contract was made, and it was held good as against the trustee in bankruptcy, because it was good against the bankrupt. It was further held that the property was not, under the facts and the law of New York, such as might have been levied upon and sold under judicial process against the bankrupt, nor could she have transferred it, within the meaning of section 70 of the bankrupt act. It was a clear case for the application of the doctrine that the trustee stands in the shoes of the bankrupt, and there was nothing in the act which made any inconsistent provision.

In *Thompson* v. *Fairbanks* the question arose as to the validity of a chattel mortgage (which had been duly filed) upon after-acquired property as against the trustee in bankruptcy of the mortgagor. The mortgagee took possession of the mortgaged property before the filing of the petition in bankruptcy, and the question raised was whether there was a violation of any provision of the bankruptcy act. It was held that the validity of such a mortgage was a local and not a Federal question, and that in such case this court would follow the decisions of the state court; and, as in Vermont such a mortgage was good, and the taking possession of the property related back to the date of the mortgage, even as against an assignee in insolvency, it was good as against the trustee in bankruptcy. It was said: "Under the present bankrupt act,

the trustee takes the property of the bankrupt, in cases un-
affected by fraud, in the same plight and condition that the
bankrupt himself held it, and subject to all the equities im-
pressed upon it in the hands of the bankrupt, except in cases
where there has been a conveyance or encumbrance of the
property which is void as against the trustee by some positive
provision of the act." As there was no provision therein
making such a mortgage void, the mortgagee was permitted
to enforce his mortgage as a valid instrument, and to retain
possession of the property. There was no fraud in fact and no
transfer of any property in fraud of creditors, and the property
was not at the time of the filing of the petition in bankruptcy,
or, at the time of the adjudication, liable to levy and sale under
judicial process against the bankrupt. It had already been
taken possession of by the mortgagee under a valid mortgage,
and was not subject to any other liability of the mortgagor.

Humphrey v. Tatman reiterates the principle that whether
such a mortgage as is referred to in the Fairbanks case is good
or bad, depends upon the state law.

In York Manufacturing Company v. Cassell, the same ques-
tion arose as in the Hewit case. There was a sale of property
to one who thereafter became bankrupt, with a condition that
no title to the property should pass until it was paid for.
Such a conditional sale was good under the Ohio law, where
the instrument was executed, except as to those creditors
who, between the time of the execution of the instrument and
the filing thereof, had obtained some specific lien upon the
property. There were no such creditors, and hence there was
no one who could question the validity of the instrument at
the time the trustee's title would have accrued, unless it was
the trustee in bankruptcy. He made the claim that the ad-
judication in bankruptcy was equivalent to a judgment or an
attachment or other specific lien on the property, so as to
prevent the vendor from asserting its title and its legal right
to remove the property on account of the non-payment of the
purchase price. We held that, as the conditional sale was valid

by the law of Ohio, except as to a certain class of creditors, if there were no such creditors there was no one who could question the validity of the instrument; that the adjudication in bankruptcy did not give the trustee the right to do so, because in that case the adjudication did not operate as the equivalent of a judgment or attachment or other specific lien on the property. The trustee represented no one who had that right, as there were no creditors who had liens on the property when the title of the trustee to the property of the bankrupt accrued. Section 70 of the bankrupt act had no application. There was no property within either the fourth or fifth subdivision of that section. The fact that if there had been a creditor of the bankrupt of the class mentioned who had obtained a specific lien on the property prior to the adjudication in bankruptcy, the trustee could in that case have enforced the same, did not make any difference, because no such thing had been done when the adjudication in bankruptcy was made. This court had theretofore approved the remark in *In re New York Economical Printing Company,* 110 Fed. Rep. 514, 518, that the present bankrupt act contemplates that a lien good as against the bankrupt and all of his creditors at the time of the filing of the petition in bankruptcy should remain undisturbed. *Hewit case, supra.* Upon these facts it was reiterated that the trustee takes the property as the bankrupt held it.

The case at bar bears no resemblance in its facts to the cases just cited. There was no valid disposition of the property in the case before us, or any valid lien. The so-called warehouse receipts issued by the warehousing company to the knitting company, upon the facts of this case, gave no lien under the law in Wisconsin, in which State they were issued. In such case this court follows the state court. *Etheridge* v. *Sperry,* 139 U. S. 266; *Dooley* v. *Pease,* 180 U. S. 126.

By section 70a, the trustee in bankruptcy is vested by operation of law with the title of the bankrupt to all property transferred by him in fraud of his creditors, and to all property which, prior to the filing of the petition, might have been

levied upon and sold by judicial process against him; and by subdivision (e) of the same section the trustee in bankruptcy may avoid any transfer by the bankrupt of his property, which any creditor of the bankrupt might avoid, and may recover the property so transferred, or its value. Here are special provisions placing the title to the property transferred by fraud, or otherwise as mentioned, in the trustee in bankruptcy, and giving him the power to avoid the same.

The title to this property was in the knitting company. There had been no valid pledge of it, because the possession had been, at all times, in the knitting company, and it could have been levied upon and sold under judicial process against the knitting company at the time of the adjudication in bankruptcy. The security company had, of course, full knowledge that the knitting company in fact at least shared in the possession of the property. It was itself an actor, or it acquiesced in the arrangement under which it had, at most, but a partial possession, and even that was subject to the control of the knitting company.

The method taken to store the property was, as found by the District Court, a mere device or subterfuge to enable the bankrupt to hypothecate the receipts, and thus raise money upon secret liens on property in the possession of the pledgor and under its control, and such scheme the court said ought not to receive judicial sanction. Such a scheme, under the facts and as carried out in this case, and with regard to Wisconsin law, was a fraud in fact, and neither the receipts nor the so-called pledge could be asserted against any of the creditors.

It was held by the Circuit Court of Appeals in a case arising in Wisconsin, relative to a chattel mortgage, which gave power to the mortgagor to make sales from the mortgaged property for his own use and benefit, that such a mortgage was fraudulent in fact, so it could not be asserted even against general creditors, citing Wisconsin cases. *In re Antigo Screen Door Co.*, 123 Fed. Rep. 249, 254.

A further question was ruled upon in the above-cited case. It was in respect to a second mortgage upon chattels which had not been properly filed, but the mortgagee had taken possession of the mortgaged property prior to the filing of the petition in bankruptcy, although long subsequent to the giving of the mortgage, and it was held that the mortgagee might hold the property as against the trustee in bankruptcy representing general creditors. There was no fraud in fact alleged. It was said by Judge Jenkins, in delivering the opinion of the court: "When the statute (Rev. St., Wis., 1898, section 2313) declares that a chattel mortgage shall be invalid against any other person than the parties thereto, unless possession be delivered and retained, or the mortgage be filed—there being no actual fraud and no collusive delay in the filing or the taking of possession—we think the statute must be construed to mean that the omission to file or to take possession renders the mortgage invalid only as to the creditor who, by execution or attachment, has acquired a lien upon the property." The case illustrates the distinction taken between fraud in fact and the mere failure to file a mortgage otherwise valid against the world.

Under the circumstances of this case we are satisfied there was no valid pledge and no equitable lien in favor of the intervenors which would take precedence of the title of the trustee by virtue of the special provisions of the bankrupt act.

The decree is

*Affirmed.*