# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 6, 1923.

## BALTIMORE TRUST COMPANY, TRUSTEE, VS. HESS STEEL CORPORATION.

*Haman, Cook, Chesnut & Markell* for Baltimore Trust Company, trustee.

*Randolph Barton, Jr.,* and *Edgar Allan Poe* for Merchants' National Bank.

BOND, CARROLL T., J.—

My opinion is that there was no pledge of the chattels, even upon the theory of agency in the Steel Corporation's employees for the bank. There was no delivery, no marking, no appropriation and no segregation of the chattels other than that which was regularly made in ordinary course of the Steel Corporation's business. In no way were the chattels treated as pledged; at most, they were by agreement merely regarded as pledged, while collected in the ordinary compartments awaiting use and consumption by the pledgor. There was an agreement for a pledge, but there was no pledge.

The argument upon the theory that one of the employees held the goods as agent for the pledgee, seems to me to have no foundation in the facts. And there seems to be in it a failure to distinguish "between a delivery (or relinquishment) to the pledgor for his own purposes, and intrusting him with custody on behalf of the pledgee." Kellogg vs. Thompson, 142 Mass. 76, 79; Moore vs. Wyman, 146 Mass. 60, 63.

In addition to the authorities cited in argument, the case of Security Warehousing Company vs. Hand, 206 U. S. 415, seems helpful on the question of an actual legal pledge in this case.

If the claimant has any case, it must be based upon an equitable lien, the right to the enforcement in equity of the agreement for a lien. I am unable to agree that an equitable lien could

not be created verbally, or that it could not attach to after-acquired property; the authorities seem to me to uphold the opposite principles. 3 Pomeroy's Equity Jurisprudence secs. 1235, 1236. And once we adopt the principle of the "equitable lien" then proceeding from the applications already made, there seems to me to be no reason why equity should not enforce an agreement for a lien on such supplies, of miscellaneous descriptions, as might from time to time, in the regular course of business, be contained in specified receptacles. It is important that we do not approach the question viewing the equitable lien as only an imperfect pledge, or a pledge with some of its formal requirements relaxed, and, so, try to fit the lien more or less to those requirements. The doctrine of equitable lien has nothing to do with the elements of an actual legal pledge; it operates when these are entirely absent. It is much more closely akin to the remedy of specific enforcement of contracts for the sale of property, indeed, is often identified with that remedy, and the guiding principles will be more clearly conceived if we approach them with the similarity to the remedy of specific performance in mind. Like that remedy, it is to be applied as concerning only the two parties and those claiming under them. Subsequent creditors, purchasers or incumbrances, without notice are not to be considered, for the claim of lien is subordinated to their claims in any event. Once an agreement to charge property as security is made clear, then the only additional requirement for an equitable lien is some designation of the specific property, or some provision for ascertaining it with certainty for the purpose of enforcement, when the time for enforcement comes. In re Kelcey (1899), 2 Ch. 530. Some of the illustrative cases cited in the note to 3 Pomeroy's Equity Jurisprudence, sec. 1235, seem to make this requirement clear. "An agreement to give security by mortgage *on lands*, when called upon to do so, does not constitute an equitable lien upon any land which the covenantor owned; nor does an agreement to give a mortgage on *sufficient lands*, or a general covenant to give security on or before a specified day *on lands* or on the covenantor's lands; but a covenant that all the land which the covenantor shall have on a certain day shall be charged

or be security will create a lien, since the description enables the particular land to be identified." And, "a general charge on all the existing property of the mortgagor is not void for uncertainty, if the property to which it attaches can be ascertained at the time of enforcement." 3 Pomeroy's Equity Jurisprudence, sec. 1235, note; Countess of Mornington vs. Keane, 2 De Gex & J. 292; In re Kelcey (1899), 2 Ch. 530.

According to the testimony in this case, the actual undertaking was merely that the supplies of certain character on hand in the storage rooms from time to time during the existence of the loan, should be charged as security. There were written stipulations for impounding those on hand on May 14th, 1920, and making withdrawals and replacements by later permission of the bank, but, as has been said, no steps were taken to impound in the manner stipulated, and no attention was paid to the written provisions for charges. And it appears not to have been in the minds of the parties that these formalities were to be observed.

It was contemplated by all except the attorney that there would be no special treatment given the goods, but that they would be made security merely by an agreement that they should be so. At any rate that was as far as the arrangement was actually carried out. And my conclusion is that this was sufficient to establish an equitable lien, so long as the goods could be identified sufficiently for enforcement of such a lien. And I think the designation of supplies kept in the storage room sufficient for enforcement. There was no such thing as an attempt to secure an unfair preference; the effort was rather to save the enterprise for all interested. I have to regret that the hurry of the parties to get this case before the Court of Appeals prevents anything like an exhaustive study and review of the decisions. The point is a nice one, without exact precedent in this State, and would be worth such a review. But having come to a conclusion in the case, I feel hardly justified in delaying the decision for anything further.

An order will be signed allowing the claim of the bank against the goods as against all but subsequent creditors and claimants without notice.