## MANUFACTURERS ACCEPTANCE CORPORATION v. HALE et al.
### No. 6244.

Circuit Court of Appeals, Sixth Circuit.
May 16, 1933.

L. M. G. Baker, of Knoxville, Tenn., for appellant.

R. L. Taylor, of Johnson City, Tenn. (Cox, Taylor & Epps, of Johnson City, Tenn., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

In a bankruptcy proceeding, in which the Dixie Chair Company, a Tennessee corporation, was adjudicated, the appellant filed proof of several items of indebtedness which it asked to have allowed as secured. The two items here involved were allowed as unsecured claims, but were denied the protection of claimed security. Upon review by the District Court the order of the referee was affirmed, and this appeal followed.

The appellant is a financing corporation. On February 25, 1930, it entered into contract with the bankrupt, in pursuance of which it loaned the bankrupt the sum of $12,-000, secured by an assignment of certain lumber and ply-wood, or veneer. At the same time the bankrupt executed a note for $15,-000, secured by a trust deed of real estate, which, it was agreed, should be additional security for the $12,000 loan, and security for all other claims then held by the appellant, or which might thereafter arise from further advances. The appellant continued to advance funds and to receive payments from time to time until July 1, 1930, the date of adjudication, at which time it held obligations of the bankrupt in an amount exceeding $25,000. All of the obligations were allowed as secured, except a note for $5,000 which the appellant had purchased from the East Tennessee National Bank of Knoxville, and the $12,000 loan that was made upon the security of the lumber and ply-wood. These obligations were allowed as unsecured claims.

### The $5,000 note.

 The history of the note is as follows: It was executed by the bankrupt and discounted with the bank on January 4, 1930. When four months later it fell due, it was renewed by a similar note dated May 4, 1930. On June 20, 1930, shortly before the bankruptcy petition was filed, and after the trust deed to the appellant was executed, the latter purchased the renewal note from the bank. The referee held, and his finding was sustained by the District Judge, that at the time the appellant purchased the note it had notice that the bankrupt was insolvent. The evidence supports their findings, and they will not be disturbed in the absence of plain mistake. Grossberger v. B. F. Goodrich Rubber Co., 8 F.(2d) 964 (C. C. A. 6). The referee concluded that to permit the appellant to apply its security to the note would create a preference. With this conclusion, sustained by the District Judge, we agree. The note in the hands of the bank was unsecured. Its transfer to the appellant added nothing to the bankrupt's assets, nor was its status as an unsecured debt in any way affected by the transfer. Buchanan State Bank v. De Groot, 39 F.(2d) 397 (C. C. A. 6).

### The $12,000 loan.

When the $12,000 loan was made by the appellant to the bankrupt upon the security of the lumber and ply-wood, there was no physical delivery of the chattels, but upon receipt of the assignment and accompanying inventory, the appellant leased from the bankrupt by written contract a room in the bankrupt's plant in which the ply-wood was stored, and a portion of the ground outside of the building on which the lumber stood. The room in the plant was shut off from the rest of the factory by a separate door. Both of the leased spaces were marked by signs indicating that they were warehouses of the appellant. Such signs remained until after the trustees took possession. At the time of the assignment the appellant executed to the bankrupt its warehouse receipt for the lumber and ply-wood, indicating that the chattels had been delivered to the appellant and were being held by it in its warehouse subject to a claim of $12,000. The assignment agreement permitted the bankrupt to use the lumber and ply-wood in its manufacture of chairs, but provided for substitution of new material purchased, or in the alternative, for payment. Subsequent inventories were made, by the appellant on May 9th, and by the bankrupt on June 25th. These inventories showed that the stock remained substantially constant, and that no appreciable amount had been removed and consumed. The bankrupt's superintendent kept a record of the amount of lumber and ply-wood used, which was kept in his office, subject to inspection by the appellant's representative.

The referee found that the chattels covered by the assignment and the warehouse receipt were delivered by the bankrupt to the appellant. This finding was affirmed by the court. The referee further found that while the assignment contract provided for a certain method by which material could be with-

drawn for use, such method was not followed, but that the bankrupt used and disposed of the chattels at will, with the approval or acquiescence of the appellant. This finding was also sustained, and both referee and court concluded as a matter of law that the conduct of the parties with respect to the property was such that it vitiated the assignment agreement and destroyed the security of the lien. While neither the findings of fact nor the conclusions of law are as specific as is desirable, what we have said fairly indicates their import.

■■ It seems clear to us that what the parties intended, and in fact accomplished, by the assignment of the lumber and plywood, the lease of the premises upon which the material was stored, the execution of the warehouse receipt, the segregation and marking of the property as belonging to the appellant, was a pledge of chattels for a present consideration passing from pledgee to pledgor, and that there was sufficient delivery to consummate the pledge. That which distinguishes a pledge from a chattel mortgage, conditional sale, or other form of chattel security, is possession by the party secured, and when possession is lost so is the security. In re James, Inc., 30 F.(2d) 555 (C. C. A. 2). We have, then, presented the narrow question as to whether the pledge originally made was later destroyed by the surrender of the pledged property by the pledgee to the pledgor.

■■ It is the general rule that a pledge will be deemed to be waived or lost by the voluntary and unconditional surrender of the pledged property. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779. It has been held, however, that if pledged property is returned to the pledgor for a limited or specific purpose, the pledgee's lien is not lost. This is true where the pledgor becomes a bailee for the pledgee, Darragh v. Elliotte, 215 F. 340, 344 (C. C. A. 6), where pledged property is delivered to the pledgor for purposes of sale, Fairbanks v. Sergent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475, or for collection for the account of the pledgee, Clark v. Iselin, 21 Wall. 360, 22 L. Ed. 568, or for exchange, the

substituted property to become security in its stead, Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995. There are many cases upholding the validity of the so-called "field storage" system for the warehousing of heavy or bulky material, the actual moving of which is inexpedient. In such cases it has been held that if the warehouseman fully discharges his duty to negative ostensible ownership by the pledgor, withdrawal and substitution will not destroy the lien. Philadelphia Warehouse Co. v. Winchester (C. C.) 156 F. 600, 614; First National Bank v. Pennsylvania Trust Co., 124 F. 968 (C. C. A. 3); Bush v. Export Storage Co., 136 F. 918 (C. C.); Fidelity Ins., Trust & Safe-Deposit Co. v. Roanoke Iron Co., 81 F. 439 (C. C.). We are of the opinion that under the circumstances of this case there was no such unqualified surrender of possession back to the pledgor as to invalidate the security. The indicia of ownership of the pledged property were maintained throughout. The lease of that portion of the premises upon which the property was stored was never surrendered or canceled. The subsequent inventory taken by the appellant was inconsistent with surrender of possession. The record kept by the bankrupt of material removed, and its replacement by subsequent purchases so that the inventory remained substantially constant, was clearly recognition of the adverse possession of the pledged chattels by the pledgee. No creditor is shown to have been deceived, or to have extended credit in reliance upon the pledged property being the property of the bankrupt. It must be remembered also that the appellant does not claim a lien upon any of the property removed. It asks to have its security applied only to that which remains. We think it is entitled to its security for the $12,000, and that the court below erred in disallowing it.

It follows that the decree below in respect to the claim represented by the $5,000 note is affirmed; that in respect to the $12,000 loan it is reversed, with instructions to allow the claim as secured, and the cause is remanded for further proceedings consistent herewith.