In re WYOMING VALLEY COLLIERIES CO.

No. 9686.

District Court, M. D. Pennsylvania.
Sept. 19, 1939.

Michael H. Sheridan, John C. Phillips, and Evan C. Jones, all of Wilkes Barre, Pa., for Consolidated Real Estate Co.

James P. Harris, of Wilkes Barre, Pa., and James S. Clifford, Jr., of Philadelphia, Pa., for Federal Reserve Bank of Philadelphia.

Paul A. McGlone, of Scranton, Pa., for employees, wage claimants.

WATSON, District Judge.

This case is brought before the Court on a petition to review the order of the Referee made on April 6, 1939, dismissing in part the petition of Frank Maga that the proceeds of the sale of certain coal be declared the property of the bankrupt.

The Wyoming Valley Collieries Company filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, on November 29, 1937. The Company was subsequently adjudicated bankrupt after the plan of reorganization had failed. The Federal Reserve Bank of Philadelphia filed a claim in the amount of $61,981.38, which claim was allowed. This claim arose by virtue of loans made by the bank to the bankrupt secured by warehouse receipts representing the coal which is the subject of this petition to review. These claims were allowed as secured claims.

■ On November 16, 1938, the Bank filed a petition with the Referee praying leave to sell the coal represented by the warehouse receipts. Notices of the hearing on this petition were mailed to all creditors, and the hearing was held on December 8, 1938. No objections were filed and an order was entered granting leave to the bank to sell the coal. At a public sale pursuant to due notice thereof, the coal was sold to one Charles Spruks for $2.85 a ton. On February 2, 1939, one Frank Maga, a wage claimant, filed a petition with the Referee alleging that the coal which was sold was not the same coal as that which was stored at the time of the issuance of the warehouse receipts, but that it was coal that was placed in storage subsequent to the issuance of the warehouse receipts, and that the said coal is the property of the bankrupt estate. At the hearing, Maga contended also that the warehousing plan was invalid. The evidence taken at the hearing amply supported the finding of the Referee that the coal sold by the bank, with the exception of 168 tons of pea coal, was the same coal which was stored and represented by the warehouse receipts.

■ Maga filed his petition for review of the order of the Referee awarding to the bank the proceeds of the sale of all of the coal except 168 tons. His principal contention before this Court was that the warehousing plan is invalid. Rule 23 of the local Bankruptcy rules of this Court provides that "A petition for review by the Court of an order of a referee shall be in the prescribed form, and be filed with the referee within ten days after such order was made, or otherwise, will not be entertained." It is clear that the objection to the validity of the warehouse receipts is an attempt to indirectly review the order of the Referee made on December 8, 1938. Hence, since the petition to review was not filed within ten days of the date of that order, by the local rules quoted above, this contention cannot now be entertained. In re L. & R. Wister & Co., 3 Cir., 237 F. 793; Riverside Oil & Refining Co. v. Dudley et al., 8 Cir., 33 F.2d 749.

■ A further formal objection to the granting of Maga's petition is that, in his original petition before the Referee, he did not allege that the warehousing plan was invalid but only that the coal sold was not the same as that which was stored at the time of the issuance of the warehouse receipts and represented thereby. Since filing his petition he has made no effort to amend it or in any other way bring the matter properly before the Referee and this Court. Therefore, it is quite clear that the petition to review should be dismissed upon formal grounds alone without reference to the merits of the case.

■ However, the learned Referee, after pointing out the formal defects above mentioned, went further and discussed the merits of Maga's contentions, and this Court feels that it may be well to express its concurrence in the conclusion which the learned Referee reached and its reasons therefor.

The warehousing plan involved in this case was as follows: A large tract of land adjacent to the breaker of the bankrupt was leased to the Consolidated Real Estate Company. This land was enclosed on two sides by a fence consisting of wooden posts and two strands of heavy wire, and on the other sides by a culm bank and a refuse bank from thirty to one hundred and fifty feet high. The fence was kept in good repair and renewed at least once. Around this land were posted a number of signs reading: "No Trespassing—Consolidated Real Estate Company." On this land the bankrupt, from time to time, placed coal by means of a chute leading directly from the breaker to the land. After a certain amount was added, to the pile of coal upon this storage field, the Consolidated Real Estate Company would issue a warehouse receipt to the Federal Reserve Bank of Philadelphia, who would then advance to the bankrupt a sum of money in accordance with a pre-arranged loan agreement. A number of receipts were issued in pursuance of this plan, and the coal represented thereby was contained in one large pile consisting of thousands of tons of coal of various sizes. When the bankrupt desired to use some of the stored coal, a notice was sent to the bank who would forward a receipt for the amount of coal desired to a bank in Scranton, and this receipt would be released to the bankrupt upon payment for the amount of coal represented by the receipt. The receipt would then be forwarded to the Consolidated Real Estate Company with a request that they notify their employees to release that amount of coal to the bankrupt. No coal was stored and removed except in accordance with this arrangement. The coal was stored and removed by employees of the bankrupt. No employee of the Con-

solidated Real Estate Company itself inspected or controlled the stored coal. There were persons other than the employees of the bankrupt who periodically inspected the coal in storage and the records of the bankrupt relative thereto, and it appears that these men acted in the interests of the Consolidated Real Estate Company.

From the above facts the Court has concluded that a valid warehousing plan exists. This type of warehousing differs from that of the ordinary type in that the bulky nature of the property stored requires a different manner of storage from that which is ordinarily used. The Courts have recognized that ordinary rules must be relaxed and the plan must be considered with due allowance for the practical difficulties which exist. Manufacturers Acceptance Corp. v. Hale, 6 Cir., 65 F.2d 76. Thus, similar plans have been declared valid involving the storage of lumber, steel billets and similar items. Manufacturers Acceptance Corp. v. Hale, 6 Cir., 65 F.2d 76; Equitable Trust Co. v. A. C. White Lumber Co., D.C., 41 F.2d 60; First Nat. Bank of New Kensington v. Pennsylvania Trust Co., 3 Cir., 124 F. 968.

It is contended that the mingling of the coal represented by the receipts is in violation of the Pennsylvania Warehouse Receipts Act; 6 Purdon's Statutes, § 152; and that, therefore, the receipts are invalid. There would seem to be little need for determining this question in view of the fact that the cases seem to treat these plans as ordinary pledges rather than strict warehousing arrangements. There are present all of the elements of a valid pledge. However, an exception is made to section 152 by section 153, which excepts fungible goods from the provisions of section 152. In the present case, each receipt represents a number of different sizes of coal, and it is clear that the mingling of the coal represented by one receipt would not violate section 152. Clearly, each size of coal is fungible since it all came from the same mine and was passed through the same breaker. Furthermore, whether or not the coal represented by each receipt were mingled, it would still be necessary to send the coal through the breaker before selling it to separate the different sizes represented by each of the receipts and to remove a certain discoloration resulting from storage which, unless removed, reduces the price of the coal.

Hence, this coal must be considered fungible from the nature of its treatment in the ordinary course of the bankrupt's business. Furthermore, the separation of this large amount of coal, estimated at approximately 14,000 tons, into piles representing that stored under each of the receipts would not only be impractical from the viewpoint of the additional labor required but would necessitate the use of a large tract of land, which in many cases would not be available. It would be a great detriment if a coal company should be prevented from thus raising funds from coal which cannot be immediately marketed by means of a plan which gives ample notice to creditors of the lien against the coal.

The admitted purpose of this warehouse plan was to create collateral for loans needed by the company for operating capital. This motive does not invalidate a plan otherwise lawful, but rather is a reason for holding the plan valid. Union Trust Co. v. Wilson, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154. The only requirement which the cases seem to impose is that the pledged goods should be so marked that creditors of the pledgor will not be led to believe that the goods are those of the pledgor. Manufacturers Acceptance Corp. v. Hale, supra; Equitable Trust Co. v. A. C. White Lumber Co., supra. In this case, the land was fully enclosed and a number of signs were placed about the premises to indicate that the property was that of the Consolidated Real Estate Company and not that of the bankrupt. It seems clear that creditors would not be deceived by this plan, and there is no contention that any creditors were in fact deceived.

The petitioner, Maga, relies chiefly upon three cases: Security Warehousing Company v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789; In re Spanish American Cork Products Company, 4 Cir., 2 F.2d 203; and In re Merz, 2 Cir., 37 F.2d 1.

In Security Warehousing Company v. Hand, supra, the facts were completely different from those of this case. At page 421 of 206 U.S., at page 722, of 27 S.Ct., 51 L.Ed. 1117, 11 Ann.Cas. 789, the Court states "And at Racine and Stevens Point the security company gave no evidences to the public of its presence. No signs were displayed to the passer-by." This alone is sufficient to distinguish the present case from the case cited.

In the case of In re Merz, at page 3, Circuit Judge Augustus N. Hand states: "The real difficulty with the claim that Auffmordt [the warehouseman] had possession is that they had no power to exclude Merz [the pledgor]. They did not hold the lease of the premises where the goods were stored, and they had no key to the premises. The signs on the floors where the merchandise was placed were those of Merz. No one going there to purchase goods would have had reasonable notice that Auffmordt had any interest in the premises." Such are not the facts of the case before this Court. Here the land upon which the coal was stored was that of the warehouse company, and there were sufficient signs to inform purchasers of the interest which was vested in the warehouse company.

The third case relied upon by the petitioner, In re Spanish-American Cork Products Co., is again a case in which the Court found that there was not sufficient notice to the public of the interest of the pledgee.

It is, therefore, the opinion of this Court that the warehousing plan involved in this case was a valid plan and there was a change of possession to the extent to which the nature of the property pledged permitted, and sufficient notice to apprize creditors of the bankrupt of the lien which existed against the property.

The order of the Referee is affirmed and the petition for review is dismissed.