**FIREMAN'S FUND AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**CAPT. FOWLER'S MARINA, INC., Defendant.**

**Civ. A. No. 70–360–G.**

United States District Court,
D. Massachusetts.

Dec. 28, 1971.

Leo F. Glynn, Boston, Mass., for plaintiff.

Edwin R. Trafton, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

GARRITY, District Judge.

This case arises out of a contract for the winter storage of a yacht and is brought under the maritime and admiralty jurisdiction of the court. The complaint alleges that during the term of the storage agreement between defendant and the yacht's owner (plaintiff's subrogor), defendant breached said agreement by permitting the yacht to be partially destroyed by fire, a result which could have been avoided but for the negligence of defendant, its agents and servants. On the basis of the evidence adduced at trial and stipulations submitted, and upon consideration of memoranda of law and oral argument, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Fireman's Fund American Insurance Company, is a California corporation with a usual place of business in Boston, Massachusetts. At all material times, plaintiff was the insurer of the yacht "Cathy." By virtue of a subrogation agreement executed by the yacht owner, plaintiff has succeeded to any rights of the owner against any person responsible for the partial loss of the yacht by fire.

2. Defendant corporation was at all material times the owner of a marina located in Revere, Massachusetts. On October 29, 1968, the yacht owner and defendant entered into a "Marina Storage Contract" for the winter storage of the yacht "Cathy." Under the terms of the contract, defendant's employees were to haul the boat from, and return it to, the water. The boat was to be stored outdoors. Defendant was given a security interest in the boat against payment for storage charges and any repairs made by it on the boat. The owner was permitted access personally to perform labor on his boat, although "no servants, agents or independent contractors" of the owner could perform such labor and any materials used in repairing and painting the yacht were to be purchased from the defendant. Finally, a clause of the contract provided that "it is agreed that the boat and all the property of the boat is at the sole risk of the boat owner while on the marina premises and that Capt. Fowler's Marina, Inc., its agents, servants and employees will not be liable for damage to or loss of said boat and all

other property of any kind, no matter how occasioned."

3. In the early morning of March 13, 1969 while the "Cathy" was in winter storage at the defendant's marina, a fire of unknown origin broke out on a yacht stored adjacent to the "Cathy." The defendant did not employ a night watchman. Responding to a telephone call from an unidentified source, the Revere Fire Department arrived at the marina. Defendant had no available source of water on the premises, and the firemen were forced to utilize a public hydrant which at the time of the fire was buried under snow. They therefore had to dig out the hydrant and then lay out 500 feet of hose from the hydrant to the point closest to the fire to which the truck could be brought, resulting in a delay of no less than 30 seconds which would not have occurred had there been an available water source on the premises.

4. The fire spread from the first boat to the "Cathy" just as the first stream of water was directed at the boats. Had the water been available 30 seconds earlier, the fire would have been confined to the first boat and the "Cathy" would not have been damaged.[1]

5. The fair and reasonable value of the repairs to the "Cathy" as a result of the fire was $3,926.00.[2]

### Conclusions of Law

■ The relationship here between the owner of the yacht and the defendant is that of bailor-bailee. It is true that the contract reserved certain limited rights to the owner, including that of personal access to work on the boat. It is equally clear, however, that (1) defendant was authorized to haul the boat, place it in a location for storage, and return it to the owner at a later date; (2) the owner's limited right of access was severely circumscribed in that he could not bring others onto the marina premises to assist him and was obligated to purchase materials for painting and repair work from the defendant; (3) not being free to utilize the labor of persons other than those employed by the defendant, the owner could not have removed the vessel from defendant's premises without defendant's authorization and the assistance of its staff. These facts indicate far more than a mere rental of space by the owner. Rather they are analogous to cases involving parking lots where an attendant takes possession of a car and parks it, in which a bailor-bailee relationship is found. See Soutier v. Kaplow, 1953, 330 Mass. 448, 450, 115 N.E.2d 149.

Having found a bailment as to this boat, the court is confronted with two arguments advanced by plaintiff: (1) the exculpatory clause is invalid either for violating article 7 of the Uniform Commercial Code as adopted by the state of Massachusetts or for contravening long-standing public policy as articulated by the Supreme Court in Bisso v. Inland Waterways Corp., 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, and (2) where a bailment has been shown, a presumption of negligence on the part of the bailee arises upon a mere showing by the bailor that he delivered the property to the bailee in good condition and that it was returned, as here, in damaged condition.

■■ In the court's view, the exculpatory clause must fail under either of

---

1. This finding is based on the unrebutted testimony of Lieutenant John Murray of the Revere Fire Department who was present at the fire.

2. There was testimony indicating that defendant had insurance coverage for certain types of liability, but the court is unable to find on the basis of this testimony that the coverage included the type of liability involved in the instant case. Were the court able to find that defendant had such coverage, and had passed the cost of such coverage on to the boat owner, this would be some evidence that the parties did not intend that the exculpatory clause be effective. See generally Fireman's Fund American Insurance Company v. Boston Harbor Marina, Inc., D.Mass., 1968, 285 F.Supp. 36, 41.

the theories advanced. Onshore storage of a yacht is deemed "storage" of "goods" under the relevant Massachusetts statutes. See Fireman's Fund American Insurance Co. v. Boston Harbor Marina, 1 Cir., 1969, 406 F.2d 917, 919 construing Mass.G.L. c. 106, §§ 7–102(1) (f), (h), 7–202(3), 7–204. Under § 7–202(3), "a warehouseman may insert in his receipt any other terms which are not contrary to the provisions of this chapter and do not impair his obligation of delivery . . . or his duty of care. . . . Any contrary provisions shall be ineffective." The fact that storage in the instant case was out of doors rather than in a warehouse or similar structure does not mean that the bailee was not a "warehouseman" since, regardless of where he keeps them, he "is a person engaged in the business of storing goods for hire." Mass.G.L. c. 106, § 7–102(1) (h); see generally In re Wyoming Valley Collieries Co., M.D.Pa., 1939, 29 F.Supp. 106. Federal law also disregards liability limiting provisions in bailment agreements on public policy grounds. See Bisso v. Inland Waterways Corp., *supra*, 349 U.S. at 90–91, 75 S.Ct. 629.

The court disagrees, however, with plaintiff's contention that it benefits from a presumption of bailee negligence in sustaining its burden of proof. Such a presumption may be both equitable and necessary in cases where bailed goods are not returned at all and where the bailee offers no reasonable explanation regarding their disappearance. See Bean v. Security Fur Storage Warehouse, Inc., 1962, 344 Mass. 674, 676, 184 N.E. 2d 64. In such cases all available evidence, either of negligence or due care on the defendant's part or of negligence or intentionally tortious activity by a third party, lies within the knowledge and control of the defendant. Here, however, the cause of the damage, fire, is ascertained and neither party has information revealing the origin of the fire. On such facts, plaintiff must allege negligence by the defendant and prove it by affirmative evidence. See Willett v. Rich, 1886, 142 Mass. 356, 358, 7 N.E. 776.

Plaintiff has sustained this burden, and for the reasons stated below the court holds that plaintiff's loss is the direct result of defendant's negligence. A bailee is obligated to exercise ordinary and reasonable care in the protection of bailed goods. See Wright v. Heil Equipment Co., 1970 Mass.Adv.Sh. 301, 302, 256 N.E.2d 318. In ascertaining whether that standard has been met here, the court has considered the "Fire Protection Standard for Marinas and Boatyards" published by the National Fire Protection Association (N.F.P.A.).[3] Under this standard, marina owners are expected to provide "the necessary equipment to control the spread of fire," § 101(a), to provide an "adequate water supply for fire fighting," § 102, and to locate "portable fire extinguishers of approved types and suitable to the hazards and circumstances . . . throughout the property . . . so . . . that an extinguisher is within 50 feet of any point," § 103. Defendant took none of these reasonable, unburdensome precautions.

Even absent evidence of the N.F.P.A. Standard, the court finds lack of reasonable care on the part of the defendant. Charged with responsibility for the "Cathy" and between 125–150 other valuable yachts, defendant took no precautions against the possibility of a nighttime fire. No watchman was employed to detect and control small fires at their incipiency, or to report a major fire promptly. No water source of any kind at any location was available on the premises. Under the circumstances these omissions constitute negligence. See Cox v. Central Vermont Railroad, 1898, 170 Mass. 129, 49 N.E. 97.

Finally, the testimony of an expert observer, Lieutenant John Murray of the

---

3. Defendant has objected to the admission of this evidence on several grounds. But similar N.F.P.A. standards have been admitted in evidence in this district. Petition of Boat Demand, D. Mass., 1958, 160 F.Supp. 833, citing Mass.G.L. c. 233, § 79B. Also this standard is recognized and applied in the marina industry.

Revere Fire Department, established that, had the time not been lost in using an alternative water source, the fire could have been confined and the "Cathy" preserved from harm. The court therefore finds that defendant's negligent failure to provide a water supply or other fire-fighting means on the premises was the proximate cause of the spread of the fire to the "Cathy."

Accordingly, a judgment will be entered for the plaintiff for damages in the stipulated amount of $3,926.00.[4]

---

4. At closing argument, defendant's counsel took the position that plaintiff had not adequately demonstrated what percentage of plaintiff's overall damage was directly occasioned by defendant's negligence. In light of the lack of proof on this point, the tardiness of the argument, and the court's understanding throughout the trial, an understanding shared by plaintiff, that the stipulated figure was intended to reflect defendant's liability should negligence be proven, the stipulated figure has been adopted and defendant's position rejected.