In the Matter of J. J. TYNE and John Caul, etc., et al., Bankrupt.

WESTERN PLUMBING SUPPLY COMPANY, Appellant,

v.

S. Harvey KLEIN, Trustee, Appellee.

No. 11636.

United States Court of Appeals Seventh Circuit.

July 6, 1956.

Herman R. Tavins, Theodore F. Lownik, John E. Toomey, John M. Kaveny, Chicago, Ill., for appellant, McCarthy, Toomey & Reynolds, Chicago, Ill., of counsel.

Joseph L. Kadison, Raymond F. Hayes, Wm. S. Collen, Chicago, Ill., for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment of the District Court which approved an order of the referee in bankruptcy directing the respondent, Western Plumbing Supply Company, to convey to the trustee in bankruptcy certain real estate which the bankrupt was occupying and which the referee found belonged to the bankrupt partnership.

These bankruptcy proceedings were instituted by the filing, on December 18, 1953, of an involuntary petition against J. J. Tyne and John Caul, copartners, doing business as the Tyne Company. Thereafter John Caul died, leaving J. J. Tyne as the sole surviving general partner. A few weeks later the partnership filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. §§ 701-799. A balance sheet attached to this petition listed the real estate in question as an asset. On March 25, 1954, the partnership filed schedules listing the real estate as an asset of the partnership but stating that all of the capital stock of respondent was in the name of J. J. Tyne. On October 11, 1954, Tyne, in an examination under oath concerning the assets of the partnership, stated that the real estate was owned by the partnership.

S. Harvey Klein, who was appointed receiver of the debtor, Tyne Company, took possession of all of the assets of the partnership, including the real estate, and continued in possession after he was elected trustee.

On January 24, 1955, the partnership filed amended schedules and therein listed the real estate as an asset of the bankrupt estate although legal title was held by respondent. The amended schedules were filed pursuant to a verified petition of the bankrupt asking that it be permitted to file them to correct the error of the first schedules which questioned the ownership of the realty.

On February 4, 1955, the partnership, J. J. Tyne and John Caul, copartners, doing business as the J. J. Tyne Company, and John J. Tyne, individually, were adjudicated bankrupt. After the adjudication the attorney for the bankrupt delivered to counsel for the trustee the Torrens certificates of title covering the real estate.

John J. Tyne operated the business of the partnership as debtor in possession under the direction of the court from December 18, 1953, to December 27, 1954. On November 26, 1954, the United States of America filed a petition and obtained an order requiring the bankrupt to pay all of its federal tax liabilities incurred after the date the petition in bankruptcy was filed, to segregate all of the withholding tax deductions in a separate bank account and to notify the Director of Internal Revenue as to the dates, amounts and place of such deposits.

On March 15, 1955, after the adjudication of the partnership as bankrupt, Tyne, in the first meeting of the creditors, *for the first time* claimed that the real estate belonged to the respondent. At the same time Tyne claimed to be unable to name the stockholders, directors or officers of the respondent except that he was the vice president.

On March 11, 1955, the trustee filed a petition for a turnover order against the Western Plumbing Supply Company, John J. Tyne and Margaret Tyne, his wife, directing them to convey the legal title of the real estate to the trustee on

the basis of the amended schedules and the testimony given by John J. Tyne on October 11, 1954, and the consistent treatment, by all the parties, of the real estate as an asset of the partnership.

John J. Tyne, as an individual, filed an answer to this turnover petition in which he stated that the title to the real estate was registered in the name of the respondent, and that the ownership of the stock of the respondent was "evidenced by certificate number 178 for 100 shares of common stock having a par value of $100.00 per share, which certificate was issued to: John J. Tyne and/or Margaret Tyne and/or * * * ," each of their four children. This answer of John J. Tyne also stated that it was not necessary to vest the legal title of the real estate in the petitioning receiver "in order to effect a sale of the real estate on behalf of the estate."

Margaret Tyne, as secretary of the respondent, executed and filed a verified answer to the turnover petition and an intervening petition on behalf of the respondent. That answer alleged that the respondent was the "owner of both the legal and equitable title to the real estate"; that the corporation, Western Plumbing Supply Company, was a legal entity and owned the real estate in question; and that all of the stock of said corporation (100 shares) was owned by John J. Tyne, Margaret M. Tyne and their four children, each of the six owners owning one-sixth of the stock. This stock was first issued on January 2, 1952, to the six members of the Tyne family as "trustees," by stock certificate No. 176, but the certificate does not disclose for whom they were acting as trustees. This stock certificate was signed J. J. Tyne, President, and J. J. Tyne, Secretary. Certificate No. 178, apparently issued in lieu of certificate 176, was executed by J. J. Tyne as President and Margaret Tyne as Secretary on June 10, 1952. The second certificate was also for 100 shares of stock and was issued to the same persons in the same proportions but the descriptive words "as trustees" were omitted from the second certificate.

The intervening petition for respondent, executed by Margaret Tyne, also alleged that the respondent was the sole owner of the real estate; that the bankrupt had filed schedules listing the real estate as being the property of the bankrupt; and that the listing of said property as an asset of the bankrupt constituted a cloud on the title of Western Plumbing Supply Company. The intervening petition therefore prayed that an order be entered "striking from the schedule of the bankrupt the said listing of the aforesaid property."

In its brief the respondent states that on December 1, 1952, respondent borrowed $50,000.00 from the Oak Park National Bank and executed a first mortgage on the real estate. However, the record shows that the bankrupt partnership applied for the loan, received the amount of the loan and applied the proceeds of the loan toward the payment of its debts. It is understandable that the Oak Park Bank in making that loan required that the note and mortgage be executed by the Western Plumbing Supply Company since the record title to the real estate was still in its name.

In addition to all of the above evidence of ownership by the bankrupt the record here shows that the real estate was continuously carried on the books of the bankrupt as an asset. Its business was conducted in the buildings located on this real estate and no rent was paid for the use of the premises. The bankrupt charged on its books the maintenance and repairs and the depreciation on this real estate, paid the taxes and carried insurance on the improvements. The Western Plumbing Supply Company, on the other hand, had since 1931 filed income tax returns listing no assets, income or liability, but showing that it was inactive. The returns of Western were signed by John J. Tyne, Jr., as its president. It is apparent from this record that the Western Plumbing Supply Company has been entirely inactive since 1931 and that the only asset remaining in its name was the bare record title to the real estate here in question. The Tyne Company on its

schedule listed the bankrupt as the debtor of the mortgage debt on the real estate and the mortgagee as the creditor.

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part as follows:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

This rule is applicable to proceedings in bankruptcy. Gordon v. Woods, 1 Cir., 189 F.2d 76, 78; Cunningham v. Elco Distributors, 6 Cir., 189 F.2d 87, 88–89, 25 A.L.R.2d 1008.

In the instant case all of the evidence, including book entries, oral and written statements by Tyne, federal income tax reports signed by Tyne, his actions in occupying the real estate without a lease, in paying the taxes and taking care of the maintenance, and in insuring the improvements in the name of the partnership, tended to prove that the equitable, beneficial ownership of the real estate was held by the bankrupt partnership, and that the Western Plumbing Supply Company was, and had been since 1931, just a corporate shell, and that respondent had inadvertently failed to transfer the bare legal title to the real estate to the Tyne Company in 1931 when it transferred all of its other assets to the partnership.

It was only after the partnership had been adjudicated a bankrupt that Tyne first claimed that respondent Western Plumbing Supply Company, instead of the partnership, owned the real estate. Neither the referee nor the District Court believed this belated claim. The finding of the referee, affirmed by the District Court, was not "clearly erroneous." We think it was fully sustained by the evidence.

In view of our opinion as expressed above, it is unnecessary to consider other questions which were raised.

The judgment of the District Court is affirmed.