280 F.2d 878
 In the Matter of J. J. TYNE and John Caul, copartners, doing business as Tyne Company, a copartnership and John J. Tyne, individually, Bankrupt-Appellant,
v.
NATIONAL SUPPLY COMPANY, a corporation, and S. Harvey Klein, Trustee, Appellees.
 No. 12784.
 United States Court of Appeals Seventh Circuit.
 June 27, 1960.
 Rehearing Denied August 22, 1960.
 
 John E. Owens, Benjamin Wham, Vincent G. Rinn, Chicago, Ill., for appellant.
 Milton L. Fisher, Joseph L. Kadison, Chicago, Ill., for appellees.
 Frank D. Mayer, Frank W. Sullivan, Edward R. Lev, Chicago, Ill., for appellee, National Supply Co., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.
 William S. Collen, Chicago, Ill., for appellee S. Harvey Klein.
 Before SCHNACKENBERG, KNOCH and MAJOR, Circuit Judges.
 MAJOR, Circuit Judge.
 
 
 1
 On December 18, 1953, an involuntary petition in bankruptcy was filed against appellants in the District Court for the Northern District of Illinois. On January 19, 1954, the matter was transferred to proceedings for an Arrangement under Chapter XI of the Bankruptcy Act. The partnership was adjudicated a bankrupt on February 4, 1955, and on March 31, 1955, an order was entered adjudicating John J. Tyne, individually and doing business as Tyne Company, a bankrupt, and providing for dismissal of the proceedings under Chapter XI and for a continuance of the matter in regular bankruptcy. John J. Tyne was the dominant principal in the partnership and on this appeal is treated by the parties as the bankrupt, hereinafter referred to as such.
 
 
 2
 The Tyne Company was a fabricator of steel pipe, tubing and allied items. National Supply Company (National), one of its sources of supply, and S. Harvey Klein, Trustee in Bankruptcy, are appellees in the instant matter. On April 6, 1954, National filed its verified Proof of Claim in the aforesaid bankruptcy proceedings in the amount of $43,672.42, for goods, wares and merchandise furnished at the special instance and request of the bankrupt. Throughout these protracted proceedings the bankrupt has objected to the allowance of National's claim on the basis that he had a claim against National in an unliquidated amount far in excess of that claimed by National. The bankrupt has attempted, first through the Trustee and later on his own, to assert this claim and in doing so has advanced numerous theories as a basis therefor.
 
 
 3
 In his schedule filed March 24, 1954, he attempted to state a claim based upon the Defense Production Act of 1950, 50 U.S. C.A.Appendix, § 2061 et seq. On October 16, 1956, the Trustee filed an objection to National's claim and also a counterclaim to that filed by National. This is referred to as the original counterclaim, which was also based upon the Defense Production Act of 1950. National filed its answer to the original counterclaim and hearing was commenced on June 4, 1957, upon the issues thus formed. At that time the Trustee requested and was granted leave to file what is referred to as the first amended counterclaim which re-stated in substance the allegations set forth in the original counterclaim, with an amended paragraph that National had charged the bankrupt a price in excess of the ceiling price then in effect. On July 1, 1957, National moved to dismiss the first amended counterclaim on the basis that the Trustee had no right of action for an alleged violation of the Defense Production Act. Hearings were had on this motion, briefs were submitted and the matter was taken under advisement.
 
 
 4
 On October 3, 1957, the Trustee requested leave to file a further amended counterclaim based on information submitted to him by the bankrupt that National had violated an oral agreement with the bankrupt to charge the "legal price" for goods sold. This proposed amended counterclaim was substantially in the same form as the first amended counterclaim. A hearing was had on the Trustee's petition, at which the Referee stated that "in view of everything which happened in this case" he would require the bankrupt to furnish certain information relating to the alleged oral agreement as a condition to the filing of the proposed amended counterclaim. This information the bankrupt neglected or refused to furnish and, on October 10, 1957, with the consent of attorneys for the bankrupt, an order was entered granting the Trustee leave to withdraw his motion to file the proposed amended counterclaim. On January 17, 1958, the Referee ruled on National's motion to dismiss the first amended counterclaim. The motion was allowed as to the first four paragraphs relating to the alleged overcharges under the Defense Production Act of 1950. The motion was overruled as to paragraphs 5 and 6, relating to certain credits to which it was asserted the bankrupt was entitled. Answer was filed by National to these two paragraphs, denying the allegations therein.
 
 
 5
 At this stage of the proceeding the bankrupt was authorized by the Referee to act through his own attorneys on the alleged basis that the Trustee refused to cooperate. Thereupon, an amendment was offered to the last counterclaim, which was in substance the same as that previously offered by the Trustee, which had been withdrawn with the consent of the bankrupt's attorneys. Again the Referee ruled that such an amendment would be permitted on condition that the bankrupt supply certain information. Thereupon, the bankrupt supplied a bill of particulars in which it was admitted that he had no claim based upon the Defense Production Act. On December 16, 1958, National moved to dismiss the bankrupt's latest counterclaim and a hearing was set for January 6, 1959. On motion of attorneys for the bankrupt, hearing was continued to January 13, 1959, and, again on his motion, to January 26, 1959. On the latter date, the bankrupt requested another continuance on the ground that one of his attorneys was ill. On February 26, 1959, appellee filed its answer to the bankrupt's counterclaim, alleging numerous affirmative defenses. On March 2, 1959, the bankrupt served interrogatories on National, to which the latter objected on the grounds that they were irrelevant and had been served too late. On March 12, 1959, the bankrupt requested a further continuance because of the illness of one of his attorneys. This motion was denied, with a statement by the Referee that he would hear proof in support of National's claim. Such proof was received and, on motion of the bankrupt, the hearing was continued to April 2, 1959. On this date, the Referee terminated further discovery sought by the bankrupt on the ground that the pleadings were closed and the matter was at issue. Again the bankrupt moved for postponement, until September 15, 1959, on the basis of illness of one of his counsel.
 
 
 6
 On April 1, 1959, attorneys for the bankrupt requested leave to file an additional counterclaim setting forth a new cause of action based upon alleged violations by National of the Robinson-Patman Act, 15 U.S.C.A. § 13 et seq. This motion was denied in an order of April 1, 1959, on the grounds, inter alia, that the bankrupt had not exercised proper diligence and that the proposed new cause of action was barred under the applicable statute of limitations. At the resumption of the trial on April 2, 1959, the bankrupt requested additional time to prepare for the trial, which petition was denied. The bankrupt refused to participate further in this hearing because of the asserted illness of one of his attorneys. In view of the bankrupt's refusal to proceed, the Referee, by his order of April 8, 1959, allowed the motion to dismiss the bankrupt's counterclaim and overruled bankrupt's objection to the claim of National.
 
 
 7
 The Referee found that the bankrupt was represented by two and sometimes three attorneys other than the one who sought a continuance because of illness; that they "had adequate time and notice to prepare for trial" of the counterclaim; that they "have throughout these proceedings delayed the prompt disposition of the various matters being heard herein," and that they "had adequate opportunity to prepare for the disposition of this matter without the necessity of [naming the attorney who was ill] participating in said trial if by reason of his health he was unable to do so, but said bankrupt and his attorneys refused to take such steps." The Referee further found that the bankrupt and the Trustee had failed to present "any evidence" in support of the objection to the claim of National and the counterclaim filed by the bankrupt to said claim; that the bankrupt did not exercise proper diligence in asserting his counterclaim, and that it would impede the orderly administration of justice to permit any further delay. Thereupon, the Referee dismissed the bankrupt's counterclaim for want of prosecution and allowed the claim of National. Upon petition to review, the Court, in an order entered June 9, 1959, approved, adopted and confirmed the findings of fact and conclusions of law contained in the Referee's orders of April 1 and April 8, 1959. It is from this order of June 9, 1959 that the appeal comes to this Court.
 
 
 8
 Much of the sketchy outline which we have recited relative to these protracted proceedings perhaps serves no purpose other than to cast a serious doubt on the bankrupt's good faith in attempting for a period of five years to state a legal claim against National. The Trustee pursued the bankrupt's fanciful claim until convinced that it was without merit and then the Referee permitted the bankrupt to pursue it further with his own attorneys.
 
 
 9
 The bankrupt in his brief states, "The sole issue before this Court is whether or not the Referee and the Court were so biased and prejudiced against the bankrupt in their rulings concerning the amended counterclaim as to amount to an abuse of discretion." At another point in his brief he asserts that the result stemmed from "collusion between the Trustee, his attorney, and the appellee, National Supply Company." These are serious charges which we think are without reasonable foundation.
 
 
 10
 In fact, much of the argument made in support of these charges is frivolous. For instance, the bankrupt states that the fact that the Trustee filed a brief in this Court demonstrates his bias and prejudice in the matter inasmuch as he had no further responsibility for the amended counterclaim after July 17, 1958. It must be remembered that the Trustee was made a party, and properly so, in the appeal to this Court. He not only had a right to file a brief but was under an obligation to do so in view of the nature of the charges directed at him by the bankrupt. As showing prejudice on the part of the Trustee, attention is called to a statement made by his counsel, "I am not interested in that," referring to the bankrupt's counterclaim. This statement was made at a hearing wherein the bankrupt was being examined relative to a claim which he had made as to the ownership of certain property. The issue at that hearing related to the ownership of property and not the merits of the bankrupt's counterclaim. It was in such context that the statement by the Trustee's counsel was made.
 
 
 11
 It is also suggested that statements by the Trustee, as well as by the Referee to the effect that the bankrupt could not be believed, show prejudice. The record furnishes a sound basis for the opinion thus expressed even though there might be a question as to its propriety, especially when made by a judicial officer. In this connection, two opinions of this Court in previous appeals by the bankrupt in the instant matter disclose that his testimony has been previously rejected. In re Tyne, 7 Cir., 234 F.2d 907, and In re Tyne, 7 Cir., 261 F.2d 249. We discern no reason why the Trustee should not take into consideration his knowledge, acquired during the course of the proceedings, of the bankrupt's veracity in determining whether to prosecute his claim further against National, or why the Referee should not consider it in the exercise of his discretion relative to the filing of a further counterclaim. Prejudice is imputed because of the fact that the bankrupt was denied his discharge and was under an order of contempt because he had refused to sign a deed to property. These orders are without pertinency to the instant appeal. In any event, the record indicates that the contempt order was based on the bankrupt's refusal to comply with a court order directing him to sign the deed. Another circumstance asserted to show prejudice on the part of the Referee is the fact that he allowed National twenty days to answer interrogatories submitted by the bankrupt when the rule provided for fifteen days. This assertion is made in the face of the fact that counsel for the bankrupt agreed to the twenty-day period.
 
 
 12
 It is not open to question but that the orders involved in this appeal, as well as others under attack, related to matters within the discretion of the Referee and that his findings of fact are controlling unless clearly erroneous. In re Tyne, 7 Cir., 234 F.2d 907, 910. Furthermore, under Rules 13(a) and 13(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the bankrupt, after his initial pleading had been filed, was entitled to file a further counterclaim only with leave of the court. As this Court stated, in Arrow Petroleum Co. v. Johnston, 7 Cir., 162 F.2d 269, 275, "The filing of an amendment after pleading time has expired is a matter within the sound discretion of the court, and we think that discretion was not abused here." In the instant situation, we discern no basis for holding either that the findings of the Referee were clearly erroneous or that he abused his discretion in the matters complained of.
 
 The order appealed from is
 
 13
 Affirmed.
 
 
 14
 SCHNACKENBERG, Circuit Judge.
 
 
 15
 I feel constrained to supplement Judge Major's opinion, in view of the charge made by bankrupt in this court that the referee was prejudiced against him.
 
 
 16
 When the bankrupt's attorney, Mr. Owens, was seeking a postponement of the hearing before the referee, that official stated that if he had known the bankrupt prior to bankruptcy and "had mentioned the things about him that I have learned since the proceeding has been pending before me, and if I then had certain ideas from the matters I learned prior to this proceeding, you might call me prejudiced. But any feeling that I have about Mr. Tyne has arisen by reason of his actions in this proceeding. I think it is not only my right, but it is my duty to take those matters into consideration in any matter in which he is in a position to influence the court one way or another. And I will not step down and put the burden upon a new referee who doesn't have the knowledge of Mr. Tyne that I have."
 
 
 17
 In response, the attorney for the trustee stated that "the Court is one hundred per cent right in its feeling toward the bankrupt."
 
 
 18
 Over the objection of Mr. Owens, who claimed illness prevented him from proceeding, the contested hearing had been set for the next day.
 
 
 19
 While the referee was technically correct in disclaiming prejudice, in a legal sense, it is apparent that the feeling which he had toward the bankrupt, regardless of its cause, prevented him from hearing and deciding the respective rights of bankrupt and the National Supply Company objectively and that, therefore, it would have been appropriate for him to have transferred the delicate scales of justice into the hands of another referee.